# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| KENAN IVERY, | CASE NO. 5:22-CV-01586 |
| Petitioner, | JUDGE SOLOMON OLIVER, JR. |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN TIM McCONAHAY, | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner Kenan Ivery ("Petitioner" or "Mr. Ivery") filed the pending habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 25, 2022.[1]  (ECF Doc. 1 ("Petition").)  The Petition pertains to Mr. Ivery's conviction for aggravated murder and other offenses following a jury trial in Summit County Court of Common Pleas CR 2014 12 3681, and his related prison sentence of life imprisonment without the possibility of parole, plus sixty-five years.  (*Id.*)

The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 7 & 16.)  For the reasons set forth herein, the undersigned recommends that the Court **DENY** Ground One of the Petition and **DISMISS** Grounds Two through Eight of the Petition based on procedural default.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). The Petition was docketed on September 7, 2022.  (ECF Doc. 1.)

# I.     Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Ninth District Court of Appeals summarized the facts underlying Mr. Ivery's conviction and sentence as follows:

{¶2} This case involves an altercation at a bar that resulted in the shooting death of an off-duty Akron police officer, as well as several other bar patrons sustaining injuries. We begin our review with a brief recitation of the pertinent facts, summarizing the State's witnesses' testimony.

{¶ 3} Tiffany, the manager of Papa Don's Pub in Akron, testified that she and her fiancé, Justin (an Akron police officer), went to Papa Don's the evening of November 15, 2014, to hang out. According to Tiffany, Ann Marie—a bar patron known to Tiffany—approached Tiffany and told her that Kenan Ivery made comments to her that made her feel uncomfortable. According to Ann Marie, Ivery aggressively tried to get her attention because he wanted her to come over and talk to him. Ann Marie declined his advances and told him she had a boyfriend, who was also in the bar. Ivery then got out of his seat and said "I don't care. I have a 40[,]" which Ann Marie assumed referred to a 40–ounce beer. Ann Marie indicated that she was "creeped * * * out," and that Ivery made her nervous, so she went and sat next to her boyfriend.

{¶ 4} When Ivery later saw Ann Marie talking to Tiffany, he immediately approached and, according to Tiffany, became angry. Ann Marie went back to her seat and Tiffany tried to calm Ivery down and defuse the situation. Meanwhile, Justin and a bar employee asked Tiffany if she needed assistance, which she declined. Realizing that Ivery was not going to calm down, Tiffany ultimately asked him to leave, and told the bartender to bring Ivery his check and a box for the chicken wings he had ordered. Ivery paid his bill but, according to the bartender, Ivery said "I don't want these fucking wings[,]" and pushed them to the side. As Ivery was walking out of the bar, he stopped to talk to Justin. An employee overheard Ivery tell Justin "I will smack that bitch" two or three times before Ivery exited the bar without further incident.

{¶ 5} About eight minutes later, Ivery returned to the bar. Tiffany immediately approached him and told him to leave, to which he responded "I'm not alone

2

anymore." This confused Tiffany because she did not see anyone with Ivery. "Big Dave," a regular patron of the bar, walked over and also told Ivery to leave. Ivery then showed Tiffany the barrel of a gun in his waistband. Realizing she needed assistance, Tiffany reached for Justin and told him that Ivery had a gun. Justin stood up from his seat and approached Ivery. Another patron, Dave E., saw Ivery pulling his shirt up, touching the gun in his waistband, and talking to Justin. Dave E. then began walking toward the men and saw Ivery pull the gun out of his waistband. Dave E. grabbed Ivery's right arm in an attempt to take the gun from him. At that point, Ivery was surrounded by Justin, Big Dave, and Dave E., who then shoved Ivery. The four men fell into a "big dog pile" near the front door and Ivery fired several shots. The shots struck Justin, Big Dave, and two other patrons. The shots also grazed another patron and went through Dave E.'s jacket. Ivery then fled from the scene on foot, and the police and EMS arrived shortly thereafter. Justin later died as a result of the gunshot wounds, but the other injured patrons ultimately recovered from their injuries.

{¶ 6} Having briefly summarized the State's evidence, we now turn to the evidence presented by the defense. Ivery testified on his own behalf. According to him, he offered to buy Ann Marie a drink several times, which she declined. After Ann Marie told him she had a boyfriend, he told her he "ha[d] a 40 on [him,]" meaning he had a .40–caliber pistol on him, because he felt threatened. As soon as he saw Ann Marie approach Tiffany, he walked over to the women. Tiffany indicated that Ann Marie told her he had called her a derogatory name, which he denied doing. Tiffany then asked him to leave and, after a brief conversation, he started to walk out of the bar. Before exiting, he stopped to talk to Justin because he recognized him from a fundraising event earlier in the night. Ivery then exited the bar, got into his car, and headed home. While on his way home, he realized that he left his chicken wings at the bar, so he returned to get them.

{¶ 7} Upon entering the bar, Big Dave approached him and told him to never talk to or touch Ann Marie again, and threatened to beat him up. Tiffany positioned herself between Ivery and Big Dave, at which point Ivery lifted his shirt several times to reveal his gun. He then noticed Justin and Dave E. moving toward him, and Big Dave moving closer. At that point, he became fearful because he thought the men were reaching for his gun. As the men were touching and shoving him he began to fall backward and—fearing for his life—he fired several shots. After he fired the shots his gun fell to the ground, so he fled from the scene because he was afraid someone would pick it up and use it against him. He then ran to a field where the police eventually arrested him.

{¶ 8} After a multi-day trial, the jury found Ivery guilty of aggravated murder, murder, attempted murder, and felonious assault, as well as the firearm specifications that accompanied those counts. The jury also found Ivery guilty of having a weapon while under disability, carrying a concealed weapon, and illegal possession of a firearm in liquor permit premises. After merging some of the counts and accompanying specifications, the trial court sentenced Ivery to life

imprisonment without the possibility of parole for the aggravated murder count, as
well as additional sentences for the remaining convictions.

*State v. Ivery*, 2018-Ohio-2177, ¶¶ 2-8, 2018 WL 2729245, at * 1-2 (Ohio App. Ct. 2018); (ECF

Doc. 7-1, pp. 329-32.)

## II.      Procedural Background

### A.      State Court Conviction

On December 15, 2014, a Summit County Grand Jury indicted Mr. Ivery on eighteen-

counts: one count of aggravated murder with death and firearm specifications; two counts of

murder with firearm specifications; five counts of attempted murder with firearm specifications;

six counts of felonious assault with firearm specifications; one count of having weapons while

under disability; one count of carrying concealed weapon; one count of illegal possession of a

firearm in liquor premises; and one count of tampering with evidence.  (ECF Doc. 7-1, pp. 8-18.)

Mr. Ivery plead not guilty to all counts.  (*Id*. at p. 20.)  Petitioner's pre-trial motion to suppress

statements that he made to the police was denied following a hearing.  (*Id*. at pp. 32-38.)

Petitioner's motion in limine to prohibit reference to the nature and circumstances of the offense

as a factor to be considered in mitigation unless and until offered by the defendant was granted in

part following a hearing.  (*Id*. at pp. 49-52.)

Trial commenced on September 8, 2015, with the jury empanelled and sworn on

September 18, 2015.  (ECF Doc. 7-1, p. 54.)  On October 13, 2015, upon motion of the State of

Ohio, the Court dismissed three attempted murder counts (Counts 7-9) and the attendant firearm

specifications.  (*Id*.)  Counts 10-18—the remaining counts and firearm specifications—were

renumbered as Counts 7-15 for ease of the jury.  (*Id*. at pp. 54-55.)  The jury began deliberations

on October 13, 2015, and returned guilty verdicts for all remaining counts, with the exception of

tampering with evidence, on October 15, 2015.  (*Id*. at pp. 55-57, 67-100.)

4

Following a mitigation hearing, on October 23, 2015, the jury found the aggravating circumstances did not outweigh the mitigating factors beyond a reasonable doubt and returned a verdict of life imprisonment without the possibility of parole for the aggravated murder count (Count 1).  (*Id*. at p. 61.)  Certain counts were merged for sentencing purposes, and the State made elections as to which counts to proceed to sentencing on.  (*Id*. at pp. 61-62.)  The murder counts (Counts 2-3) and one felonious assault count (Count 4) were merged with the aggravated murder count (Count 1), and the State elected to proceed with sentencing on Count 1.  (*Id*.)  The court sentenced Mr. Ivery to a definite term of life imprisonment without the possibility of parole for the crime of aggravated murder.  (*Id*. at p. 62.)  Additional sentences were imposed for the other counts, to be served consecutive with each other, for a total sentence of life imprisonment without the possibility of parole and an additional sixty-five years.  (*Id.* at pp. 62-64.)  The Journal Entry of sentencing was docketed on October 29, 2015.[2]  (*Id*. at pp. 59-65.)

**B.      Direct Appeal**

On February 28, 2017, through counsel, Mr. Ivery filed a notice of appeal with the Ninth District Court of Appeals from his judgment of conviction and sentence.[3]  (ECF Doc. 7-1, pp. 223-33.)  He raised the following assignments of error in his November 11, 2017 appellate brief:

1.      The trial court erred in refusing to instruct the jury on voluntary manslaughter and reckless homicide.

2.      Appellant's conviction for aggravated murder, murder, attempted murder

---

[2] On November 30, 2015, the court ordered the October 28, 2015 entry to be filed nunc pro tunc to correct a typo in a renumbered firearm specification.  (ECF Doc. 7-1, pp. 102-08.)  That nunc pro tunc entry was docketed on December 8, 2015.  (*Id*. at p. 102.)

[3] Mr. Ivery attempted to appeal earlier.  First, he attempted to appeal on November 20, 2015.  (ECF Doc. 7-1, pp. 110-11.)  That appeal was dismissed on February 2, 2016, because the Ninth District Court of Appeals concluded that the order appealed did not resolve all counts and that it therefore lacked jurisdiction because the order was not a final judgment of conviction.  (*Id*. at pp. 169-70.)  After the trial court issued a nunc pro tunc entry on May 16, 2016 (*id*. at pp. 177-84), Mr. Ivery again attempted to appeal his conviction and sentence (*id*. at pp. 186-95).  On June 17, 2016, the Ninth District Court of Appeals again found that it lacked jurisdiction over the attempted appeal and dismissed the appeal.  (*Id*. at pp. 205-06.)  The trial court entered another nunc pro tunc entry on February 6, 2017.  (*Id*. at pp. 213-21.)  Mr. Ivery then filed his third notice of appeal on February 28, 2017.  (*Id*. at p. 223.)

and felonious assault were based upon insufficient evidence as a matter of
law and was against the manifest weight of the evidence.

3.      The trial court erred in denying a Batson challenge when it improperly
        applied the three step process established by the U.S. Supreme Court.

4.      The trial court committed reversible error when it permitted the State of
        Ohio to elicit expert testimony from lay witnesses.

(*Id.* at pp. 236, 242-59.)  On December 20, 2017, the State of Ohio filed its appellate brief.  (*Id.*

at pp. 270-327.)  On June 6, 2018, the Ninth District Court of Appeals affirmed the judgment of

the trial court.  (ECF Doc. 7-1, pp. 329-40.)

        On August 24, 2018, Mr. Ivery filed a pro se notice of appeal with the Supreme Court of

Ohio (ECF Doc. 7-1, pp. 342-43) and motion for leave to file a delayed appeal (*id.* at pp. 345-

66).  On October 24, 2018, the Supreme Court of Ohio granted Mr. Ivery's motion for a delayed

appeal.  (*Id.* at p. 368.)  In his November 5, 2018 memorandum in support of jurisdiction (*id.* at

pp. 370-94), Mr. Ivery raised a single proposition of law, which related to the first assignment of

error he raised in his direct appeal (*Id.* at pp. 376-81).[4]  In that proposition of law, Mr. Ivery

asserted: "The trial court erred in refusing to instruct the jury on voluntary manslaughter as a

lesser included offense, in violation of Ivery's right to Due Process and Equal Protection under

the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio

Constitution."  (*Id.* at pp. 376-81.)  The State of Ohio filed its memorandum in opposition on

December 4, 2018.  (*Id.* at pp. 396-400.)  On January 23, 2019, the Supreme Court of Ohio

declined to accept jurisdiction of Mr. Ivery's appeal.  (*Id.* at p. 402.)

---

[4] Mr. Ivery stated that the court of appeals overruled his first, third, and fourth assignments of error and declined to
rule on the merits of his second assignment of error because he "'cited no authority in support of his [second]
assignment of error,'" and that he intended to resubmit his second assignment of error in an App. R. 26(B)
application along with other claims that he felt should have been raised in his direct appeal.  (ECF Doc. 7-1, p. 376
(quoting court of appeals's June 6, 2018 decision at ¶18 (ECF Doc. 7-1, pp. 335-36)).)  He also stated that he had an
App. R. 26(A) motion for reconsideration pending as to his first assignment of error.  (*Id.*)

**C.**     **First App. R. 26(A) Application for Reconsideration**

On June 15, 2018, Mr. Ivery filed a pro se application for reconsideration pursuant to

App. R. 26(A), requesting that the court of appeals reconsider its decision as to his first

assignment of error on direct appeal, which related to the trial court's refusal to instruct the jury

on voluntary manslaughter as a lesser included offense of aggravated murder.  (ECF Doc. 7-1,

pp. 404-10.)  On June 22, 2018, the State filed an opposition brief.  (*Id*. at pp. 412-14.)  On July

25, 2018, the court of appeals denied Mr. Ivery's App. R. 26(A) application.  (*Id*. at pp. 416-18.)

**D.**     **First App. R. 26(B) Application to Reopen**

On August 3, 2018, Mr. Ivery filed a pro se application to reopen his direct appeal

pursuant to App. R. 26(B), arguing he had received ineffective assistance of appellate counsel.

(ECF Doc. 7-1, pp. 420-29.)  He asserted that his appellate counsel was ineffective for failing to

"raise winnable issues in the direct appeal" and to "properly raise and/or support three of the four

assignments of error that were raised in the direct appeal."  (*Id*. at p. 420.)  First, he argued that

counsel did not adequately argue the second assignment of error, the sufficiency of the evidence

and manifest weight of the evidence challenges, and that he was prejudiced because the court of

appeals did not consider the merits of those arguments due to counsel's deficient arguments.  (*Id*.

at pp. 420-22.)  Next, he argued that counsel did not adequately argue the third assignment of

error, the challenge to the trial court's dismissal of a juror, and did not properly support the

fourth assignment of error, the challenge to allowing expert testimony from a lay witness.  (*Id*. at

p. 422.)  Mr. Ivery proposed to raise the following claims in his application for reopening:

1.     Sufficiency of evidence challenge as to aggravated murder and peace officer
       felonious assault and firearm specification counts;

2.     Manifest weight of the evidence challenge as to aggravated murder count,
       asserting he was acting in the spur of the moment which would support a
       conviction for voluntary manslaughter and/or was acting in self-defense;

3.     Consecutive sentences challenge;

4.     Sentencing error challenge as to sentencing on firearm specifications;

5.     Ineffective assistance of trial counsel for not raising during trial that Mr. Ivery had been diagnosed with PTSD;

6.     Failure of trial court to adequately respond to the jury's request for further instruction regarding what constitutes "spur of the moment"; and

7.     Trial court's refusal to instruct jury on lesser included offense of reckless homicide and negligent homicide.

(*Id*. at pp. 422-29.)  He also said that he intended to resubmit his third and fourth assignments of error on direct appeal if his application to reopen was granted because both assignments of error were inadequately and/or improperly supported by appellate counsel.  (*Id*. at p. 429.)  The State filed an opposition brief on August 13, 2018, arguing that the application was procedurally defective because it failed to include a sworn statement as required by the rule.  (*Id*. at pp. 431-32.)  In his August 22, 2018 reply brief, Mr. Ivery challenged the contention that his application was procedurally defective.  (*Id*. at pp. 434-37.)  On June 13, 2019, the Ninth District Court of Appeals granted Mr. Ivery's application to reopen his appeal (*id*. at pp. 439-40), finding:

> In his application, Appellant alleges that his appellate counsel was ineffective for failing to develop arguments relative to the sufficiency and manifest weight of the evidence, for failing to raise an equal-protection claim relative to the dismissal of a potential juror, and for failing to develop an argument regarding the prejudice he suffered as a result of the State eliciting expert testimony from lay witnesses. He also alleges that his appellate counsel was ineffective for failing to raise winnable issues on appeal, including issues related to the trial court's jury instructions and the imposition of consecutive sentences, among others. Attached to the application is Appellant's affidavit in support of the application.

> Upon review, the Court finds that there is a genuine issue that counsel was ineffective in representing Appellant on appeal. This Court, therefore, grants Appellant's application to reopen. This case shall proceed as on an initial appeal in accordance with the Ohio Rules of Appellate Procedure.

(*Id*.)  Pursuant to App. R. 26(B)(6)(a), the court appointed new appellate counsel for Mr. Ivery.

(*Id*. at p. 440.)  The court also directed the filing of a brief, ordering pursuant to App. R. 26(B)(7)

8

that the brief address "'the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency.'"  (*Id*.)  In his October 14, 2019 brief (*id*. at pp. 442-79), Mr. Ivery raised the following four assignments of error, through counsel:

1.     The evidence in this case was insufficient as a matter of law to support the convictions for aggravated murder, murder, attempted murder and felonious assault.

2.     The verdicts in this case for aggravated murder, murder, attempted murder and felonious assault were against the manifest weight of the evidence.

3.     Pursuant to the defendant's right to due process and equal protection, the trial court employed the wrong legal standard for examin[in]g the suitability of a jury, thereby entitling the defendant to a new trial.

4.     Trial court erred in refusing to instruct the jury reckless homicide.

(*Id*. at pp. 452-68.)  On November 25, 2019, the State of Ohio filed its brief in opposition.  (ECF Doc. 7-1, pp. 481-532.)  On December 4, 2019, Mr. Ivery attempted to strike the brief filed by his court-appointed appellate counsel and dismiss that counsel, but his request was denied.  (ECF Doc. 7-1, p. 733; ECF Doc. 16, p. 12.)  On June 17, 2020, the Ninth District Court of Appeals overruled Mr. Ivery's four assignments of error, confirmed its prior decision, and affirmed the trial court's judgment.  (*Id*. at pp. 534-51.)

On February 2, 2021, Mr. Ivery filed a pro se notice of appeal (ECF 7-1, pp. 553-54) and memorandum in support of jurisdiction (*id*. at pp. 555-92) with the Supreme Court of Ohio.  In his memorandum in support of jurisdiction, Mr. Ivery raised the following propositions of law:

1.     There was insufficient evidence to support Ivery's convictions for aggravated murder, murder, attempted murder and felonious assault, and the convictions were against the manifest weight of evidence, in violation of Ivery's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

2.     The trial court abused its discretion and violated Ivery's Due Process protections under the Fifth and Fourteenth Amendments to the U.S.

Constitution and Article I, Section § 10 of the Ohio Constitution when it improperly removed petit juror Ron Barnes.

(*Id*. at pp. 556, 560-71.) The State of Ohio filed a memorandum in opposition on February 19, 2021. (*Id*. at pp. 594-600.) On April 13, 2021, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. (*Id*. at p. 602.)

**E.  Second App. R. 26(A) Application for Reconsideration**

On July 28, 2020, Mr. Ivery filed a second pro se application for reconsideration pursuant to App. R. 26(A), requesting that the court of appeals reconsider its June 17, 2020 decision overruling the assignments of error raised in his first App. R. 26(B) application and affirming his conviction and sentence.[5] (ECF Doc. 7-1, pp. 604-27.) The State filed an opposition on August 4, 2020. (*Id*. at pp. 629-31.) Mr. Ivery filed a reply on August 17, 2020. (*Id*. at pp. 633-35.) On December 21, 2020, the Ninth District Court of Appeals denied Mr. Ivery's second application for reconsideration. (*Id*. at pp. 637-38.)

**F.  Second App. R. 26(B) Application to Reopen**

On September 17, 2020, Mr. Ivery filed a second pro se application to reopen his appeal pursuant to App. R. 26(B), arguing that the attorney appointed in connection his first App. R. 26(B) application rendered ineffective assistance. (ECF Doc. 7-1, pp. 640-51.) He asserted that his counsel provided ineffective assistance of counsel by failing to adequately argue the sufficiency of evidence assignment of error and failing to raise winnable issues. (*Id*. at pp. 642-43.) He proposed to raise the following claims in his application for reopening:

1.  Preponderance of evidence supports Ivery's claim he was acting in self-defense;

---

[5] He argued that reconsideration was warranted because his App. R. 26(B) court appointed counsel failed to support his first and second assignments of error (sufficiency of evidence and manifest weight of evidence) with the trial record, and the court of appeals made an obvious error with respect to his third assignment of error (dismissal of petit juror). (ECF Doc. 7-1, pp. 605, 626, 633, 634.)

2.    Insufficient evidence to support convictions for first degree felonious assault in Counts 4 and 10 and for the peace officer specifications in Counts 1-4 and 10;

3.    Trial court failed to provide clarification to jury on "spur of the moment";

4.    Trial court erred by allowing the State to elicit expert testimony from a lay witness; and

5.    Ineffective assistance of trial counsel based on failure to: (1) raise during trial that Ivery was diagnosed with post-traumatic stress disorder; (2) object and not request a mistrial based on repeated and improper references during trial to "Officer Winebrenner"; and (3) object when trial court provided the jury with erroneous instructions that directed the jury to a verdict of guilty.

(*Id*. at pp. 643-51.)  The State filed an opposition to Mr. Ivery's application on October 19, 2020, arguing that his application was barred by res judicata and untimely.  (*Id*. at pp. 653-57.)  On November 3, 2020, Mr. Ivery filed a reply in support of his application to reopen.  (*Id*. at pp. 659-662.)  On January 28, 2021, the Ninth District Court of Appeals denied Mr. Ivery's application to reopen, finding that Mr. Ivery "ha[d] no right to file successive applications for reopening, and such applications are barred by res judicata."  (*Id*. at pp. 664-65 (citing *State v. Twyford*, 106 Ohio St.3d 176, 2005-Ohio-4380, ¶ 6).)

On March 10, 2021, Mr. Ivery filed a pro se notice of appeal from the court of appeals's denial of his second App. R. 26(B) application (ECF 7-1, pp. 667-68) and memorandum in support of jurisdiction (*id*. at pp. 669-89) with the Supreme Court of Ohio.  In his memorandum in support of jurisdiction, Mr. Ivery raised the following propositions of law:

1.    Ivery's constitutional rights to due process and equal protection were violated when the Ninth District Court of Appeals denied his App. R. 26(B) Application for Reopening.

2.    The Ninth District abused its discretion by denying Ivery leave to proceed pro se on his reopened appeal, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

3.    The trial court's erroneous jury instruction denied his Sixth Amendment

11

right to a fair trial and his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

4.      There was insufficient evidence presented at trial to find Ivery guilty of first degree felonious assault, as charged in Counts 4 and 10, and the peace officer specifications under R.C. 2941.1412, as charged in Counts 1, 2, 3, 4 and 10, and his convictions violate his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

5.      Ivery was denied effective assistance of counsel, as guaranteed under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

6.      The preponderance of evidence supports Ivery's affirmative defense of self-defense, and his convictions in Counts 1-11, as charged in his indictment, violate his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

(*Id*. at pp. 670-71, 674-86.)  The State of Ohio filed a memorandum in opposition on April 7, 2021.

(*Id*. at pp. 691-97.)  On May 25, 2021, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. [6]  (*Id*. at p. 699.)

**G.**    **Federal Habeas Corpus Petition**

Mr. Ivery raises the following eight grounds for relief in his Petition:[7]

**Ground One:** The trial court erred in refusing to instruct the jury on voluntary manslaughter.

**Ground Two:** The evidence presented was insufficient to support Petitioner's convictions, violating Due Process of the Fourteenth Amendment that protects a criminal defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

**Ground Three**: The trial court violated Petitioner's Due Process and equal Protection under the Fifth and Fourteenth Amendment of the United States

---

[6] In addition to his filings in state court, Mr. Ivery filed three petitions for a writ of certiorari in the United States Supreme Court, each of which was denied.  (*See* ECF Doc. 7, pp. 14-15.)

[7] The Petition sets forth supporting facts for each ground for relief.  (*See* ECF Doc. 1, pp. 9-29.)

Constitution when prospective African-American jurors were improperly dismissed.

**Ground Four**: The trial court erred, over trial counsel's objection, by refusing to instruct the jury on lesser included offenses of reckless homicide and negligent homicide.

**Ground Five**: Petitioner was denied his constitutional right to effective trial counsel when counsel failed to (1) Present evidence at trial that petitioner has been diagnosed with Post-traumatic stress disorder. (P.T.S.D.) and (2) to object when the trial court gave erroneous jury instructions that guided the jury to a guilty verdict, and (3) not objecting or asking requesting for a mistrial based on repeated improper references made during trial of "Officer Winebrenner."

**Ground Six**: The preponderance of evidence supports Kenan's claim that he was acting in self-defense, and his convictions in count 1-11 as charged in his indictment, violate his due process protections under the fifth and fourteenth amendments to the United States constitution.

**Ground Seven**: The trial court erred in its jury instruction regarding self-defense therefore denying Petitioner his Sixth amendment right to a fair trial and due process pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

**Ground Eight**: Trial court erred in failing to adequately respond to the jury's request for further instruction on what constitutes "spur of the moment," denying petitioner his Sixth amendment right to a fair trial and due process pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

(ECF Doc. 1, pp. 9-31.)

### III.    Law & Analysis

#### A.    Parties' Arguments

Respondent argues that Ground One of the Petition should be dismissed and/or denied because it is not cognizable on federal habeas review and is without merit.  (ECF Doc. 7, pp. 17-18, 37-39.)  Petitioner responds that Ground One is cognizable because his case was a capital case and asserts that his claims in Ground One are meritorious.  (ECF Doc. 16, pp. 2-5.)

As to the remaining seven grounds for relief (Grounds Two through Eight), Respondent asserts that dismissal is required based on procedural default (ECF Doc. 7, pp. 18-34), and that

Grounds Two, Three, and Four should also be denied on the merits (*id.* at 39-52).  Petitioner responds that any procedural default should be excused due to the ineffectiveness of his appellate counsel on direct appeal and in his first App. R. 26(B) proceedings, his showing of prejudice, and the lack of a state corrective process to challenge the ineffectiveness of appellate counsel in a reopened appeal.  (ECF Doc. 16, pp. 6-7, 12-13, 16-19, 24-27.)  He further argues that Grounds Two through Eight are meritorious.  (*Id.* at pp. 7-29.)

## B.     Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  If an application involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

**C.  Ground One Should Be Dismissed and/or Denied on Its Merits**

In Ground One, Petitioner alleges that the trial court erred when it refused to instruct the jury on voluntary manslaughter.  (ECF Doc. 1, pp. 9-10.)  Respondent asserts that this claim is not cognizable on federal habeas review because the Supreme Court "has never held that due process requires instructing the jury on a lesser included offense in a non-capital case."  (ECF Doc. 7, pp. 17-18 (citing *McMullan v. Booker*, 761 F.3d 662, 666-67 (6th Cir. 2014).)  Petitioner responds that Ground One is cognizable in federal habeas proceedings because his case was a capital case.  (ECF Doc. 16, pp. 2-5 (relying on *Beck v. Alabama*, 447 U.S. 625 (1980)).)

Respondent also argues that Ground One should be denied on the merits because the state appellate court's decision upholding the trial court's refusal to instruct the jury on voluntary manslaughter was not objectively unreasonable.  (ECF Doc. 7, pp. 37-39.)  Petitioner argues in response that the trial court's refusal to provide an instruction on voluntary manslaughter violated his Eighth and Fourteenth Amendment rights when the facts presented at trial are considered.  (ECF Doc. 16, pp. 2-5.)  These arguments will be addressed in turn.

**1.  Any State Law Challenge Raised in Ground One is Not Cognizable**

Petitioner argues that he is entitled to habeas relief in Ground One under the U.S. Supreme Court standard in *Beck v. Alabama*, 447 U.S. 625, due to the trial court's failure to instruct the jury on voluntary manslaughter.  (ECF Doc. 16, p. 2.)  As the Sixth Circuit explains, the *Beck* court held that "a jury instruction violated the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment when it prohibited a capital jury from returning a guilty

verdict on a lesser included offense to capital murder." *Jackson v. Bradshaw*, 681 F.3d 753, 777 (6th Cir. 2012) (citing *Beck*, 447 U.S. at 632). More specifically, the *Beck* court held that a sentence of death may not be constitutionally imposed "after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict[.]" *Beck*, 447 U.S. at 627. In so finding, the court observed: "In the federal courts, it has long been 'beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" *Id.* at 635 (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)).

In the habeas corpus context, however, the Sixth Circuit clarified that the "Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) (citing *Beck*, 447 U.S. at 638 n. 14); *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders,* 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)). "Because the Supreme Court has never held that due process requires lesser-included-offense instructions in a non-capital case," the *McMullen* court found that the petitioner in a federal habeas proceeding had not shown under § 2254(d)(1) that the trial court's failure to instruct the jury on involuntary manslaughter in a non-capital case violated "federal law that has been clearly established by the Supreme Court." 761 F.3d at 667.

Respondent cites to *McMullan* in arguing that the claim in Count One "is not cognizable in federal habeas corpus." (ECF Doc. 7, pp. 17-18.) This argument is not fully persuasive for two reasons. First, Mr. Ivery was prosecuted for a capital offense, meaning that the underlying case in this instance was not "a non-capital case." The indictment included a charge of

16

aggravated murder with a specification for death (ECF Doc. 7-1, pp. 8-9), and the jury found Mr. Ivery guilty of Count One and the specification (*id*. at pp. 67-68, 214).  While the jury ultimately returned a verdict for life imprisonment without the possibility of parole on Count One (*id*. at p. 216), Mr. Ivery was prosecuted for a capital crime.  Second, the Sixth Circuit in *McMullan* did not hold that a jury instruction challenge in a non-capital case is not cognizable in federal habeas corpus.  Instead, the court found that the relevant claim failed on its merits because the petitioner did not identify "federal law that has been clearly established by the Supreme Court" to support the alleged constitutional violation.  *McMullan*, 761 F.3d at 667 (citing § 2254(d)(1)).

Nevertheless, it has long been established that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and that federal courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Here, Mr. Ivery has based his arguments in support of Ground One on citations to Ohio law, in addition to citations to *Beck* and some other federal cases.  (*See* ECF Doc. 16, pp. 2-4.) Accordingly, to the extent that Mr. Ivery is seeking federal habeas relief because the trial court's refusal to instruct the jury on voluntary manslaughter violated state law or procedural rules, he fails to state a claim upon which federal habeas relief may be granted, and the undersigned recommends that the Court **DISMISS** the claim as non-cognizable.

17

**2.     Petitioner Has Failed to Show a Constitutional Violation Warranting Federal Habeas Relief in Ground One**

On direct appeal, the state court of appeals considered the merits of Mr. Ivery's assignment of error alleging that the trial court erred when it refused to instruct the jury on voluntary manslaughter and found the argument to be without merit, explaining:

{¶ 9} In his first assignment of error, Ivery argues that the trial court erred by not instructing the jury on voluntary manslaughter—an inferior degree of murder—and reckless homicide, a lesser-included offense of murder. *State v. Terrion*, 9th Dist. Summit No. 25368, 2011–Ohio–3800, ¶ 11 ("Voluntary manslaughter is * * * an inferior degree of murder."); *State v. Elwell*, 9th Dist. Lorain No. 06CA008923, 2007–Ohio–3122, ¶ 39 ("reckless homicide is a lesser included offense of murder * * *."). We disagree.

{¶ 10} The test for whether a trial court is required to give a jury instruction on an inferior offense is the same test that is applied when the defendant seeks a jury instruction on a lesser-included offense. *State v. Powe*, 9th Dist. Summit No. 21026, 2002–Ohio–6034, ¶ 57, citing *State v. Shane*, 63 Ohio St.3d 630, 632 (1992). That test requires the trial court to "view the evidence in the light most favorable to the defendant" and determine whether "'sufficient evidence' [exists] to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" (Emphasis sic.) *State v. Trimble*, 122 Ohio St.3d 297, 325 (2009), quoting *Shane* at 632–633. "[W]hen the evidence presented at trial does not meet this test, a charge on the lesser included (or inferior-degree) offense is not required." *Shane* at 632.

{¶ 11} At trial, Ivery requested a voluntary manslaughter jury instruction, which the trial court denied. Revised Code Section 2903.03(A) governs voluntary manslaughter and provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." In addition to the above-delineated test—and specific to voluntary manslaughter— "the trial court must make a determination that 'evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.' " *Terrion*, 2011–Ohio–3800 at ¶ 13, quoting *Shane* at paragraph one of the syllabus.

{¶ 12} "The inquiry into the mitigating circumstances consists of both objective and subjective components." *Terrion* at ¶ 13, citing *Shane* at 634. "The objective component determines whether the provocation in a given case 'is reasonably sufficient to bring on sudden passion or a sudden fit of rage[.]'" *Terrion* at ¶ 13, quoting *Shane* at 634. "Reasonably sufficient provocation is provocation 'sufficient to arouse the passions of an ordinary person beyond the power of his or her

18

control.'" *Terrion* at ¶ 13, quoting *Shane* at 635. The subjective component involves the "'emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time' to determine if he was in fact provoked." *Terrion* at ¶ 13, quoting *Shane* at 634.

{¶ 13} Here, Ivery testified that he fired his gun because he feared for his life when the three men surrounded him and reached for his gun. He testified that he thought the men would "take it and kill [him,]" so he "defend[ed] [him]self." He further testified that he "wasn't angry[,]" and repeatedly stated that he was "scared."

{¶ 14} As the State points out, this case bears similarities to our prior decision in *State v. Thomas*, 9th Dist. Summit No. 27266, 2015–Ohio–2935. There, the defendant fatally shot the victim and was charged with aggravated murder. *Id.* at ¶ 2. At trial, the defendant testified that when he fired the gun, "he was angry and afraid that [the victim] would regain control of the gun and shoot [him]." *Id.* at ¶ 29. On appeal, the defendant argued that the trial court erred when it refused to instruct the jury on voluntary manslaughter and reckless homicide. *Id.* at ¶ 25. This Court rejected the defendant's argument, concluding that his testimony "demonstrated that he shot [the victim] because he feared [the victim] would have killed or hurt him, not because [the victim] had provoked him into firing the gun due to a fit of rage or sudden passion." *Id.* at ¶ 29. We, therefore, held that "the trial court did not err by failing to instruct on voluntary manslaughter." *Id.* This same analysis applies here. Ivery's testimony indicated that he fired his gun because he was afraid the men would take it from him and shoot him. We, therefore, cannot say that the trial court erred by refusing to instruct the jury on voluntary manslaughter.

*Ivery*, 2018 WL 2729245, at * 2-3; (*see also* ECF Doc. 7-1, pp. 332-34).

Mr. Ivery challenges this determination, arguing that he was entitled to a voluntary manslaughter instruction as a lesser included or inferior offense for his murder charge.  (ECF Doc. 16, pp. 2-4.)  In support, he highlights evidence that he asserts could have supported a finding that he was agitated and angry at the time of the crime, and asserts that this Court should "evaluat[e] the evidence in the light favorable to [Mr. Ivery] without weighing the persuasiveness of the evidence[.]"  (*Id.* at pp. 4-5.)  (*Id.* at p. 5.)  But that is not the applicable standard.  Under AEDPA, Mr. Ivery must demonstrate instead that the challenged decision by the state court of appeals was (1) contrary to or an unreasonable application of clearly

established federal law or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).

As to the first standard, whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), Mr. Ivery has cited two Supreme Court decisions in his argument in support of Ground One, *Beck* and *Hopper v. Evans*, 456 U.S. 605 (1982).  (*Id.* at pp. 4-5.)  Neither holding is implicated in this case.

The *Beck* court held that a death sentence may not be constitutionally imposed "after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict[.]"  *Beck*, 447 U.S. at 627.  Here, while the jury found Mr. Ivery guilty of a capital offense, the jury also received instructions and returned guilty verdicts on non-capital offenses involving the same victim, including murder and felonious assault.  (ECF Doc. 7-1, pp. 55-57, 67-80.)  Thus, consistent with the holding in *Beck*, the jury was afforded "a less drastic alternative than the choice between conviction of the [capital] offense charged and acquittal."  *Beck*, 447 U.S. at 633.  Accordingly, Mr. Ivery has not shown that the appellate court decision upholding the trial court's refusal to instruct the jury on voluntary manslaughter was contrary to or an unreasonable application of the Supreme Court's holding in *Beck*.

In *Hopper v. Evans*, the Supreme Court clarified the scope of its prior holding, explaining that *Beck* had held "that the jury must be permitted to consider a verdict of guilt of a noncapital offense 'in every case' in which 'the evidence would have supported such a verdict.'"  456 U.S. at 610.  In other words, while *Beck* did hold that due process required a lesser included offense instruction in certain circumstances, an instruction was required "*only* when the evidence

20

warrants such an instruction." *Id.* at 611 (emphasis in original).  Specifically, the *Hopper* court

held that "[a]n instruction on the offense of unintentional killing . . . was . . . not warranted" in a

capital case where the jury was not instructed regarding noncapital offenses because the evidence

"not only supported the claim that respondent intended to kill the victim, but affirmatively

negated any claim that he did not intend to kill the victim." *Id.* at 613.  Since *Hopper* and *Beck*

were similarly narrow—i.e., capital cases where the jury was not instructed on any noncapital

offenses—*Hopper* is also inapposite to this case, where the jury received instructions for both

capital and non-capital offenses, and returned guilty verdicts on all counts.  (ECF Doc. 7-1, pp.

55-57, 67-80.)  Accordingly, Mr. Ivery has not shown that the appellate court decision upholding

the trial court's refusal to instruct the jury on voluntary manslaughter in this case was contrary to

or an unreasonable application of the Supreme Court's holding in *Hopper*.

Since Mr. Ivery has failed to show that the state court's decision regarding the voluntary

manslaughter jury instruction was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," the

undersigned concludes that he has failed to present a meritorious claim for habeas corpus relief

under 28 U.S.C. § 2254(d)(1) in Ground One of the Petition.  *See McMullan*, 761 F.3d at 666-

667 (finding a habeas claim under § 2254(d)(1) lacked merit when the circumstances of the

underlying case did not match the circumstances establishing a due process violation in *Beck*).

As to the second standard for AEDPA relief, whether the state court decision "was based

on an unreasonable determination of the facts in light of the evidence presented in the State

proceeding," 28 U.S.C. § 2254(d)(2), Mr. Ivery does not specifically challenge the factual

findings of the state court of appeals under this standard but he does highlight certain trial

evidence which he believes shows that he "was agitated and angry" and "did not cool of[f]" even

after leaving and returning to the bar, and that he was "provoked when three men surround[ed] him, grab[bed] him and push[ed] him to the floor via over a table."  (ECF Doc. 16, pp. 4-5.)

The Sixth Circuit has explained that "[a] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record."  *Matthews*, 486 F.3d at 889 (quoting and citing 28 U.S.C. § 2254(d)(2) and § 2254(e)(1)).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (internal citations and quotations omitted).  "Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Elder v. Berghuis,* 644 F. Supp. 2d. 888, 893 (W. D. Mich. 2009) (citing *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 991 (6th Cir. 2007)).

Mr. Ivery has not rebutted the factual determinations of the state court of appeals by clear and convincing evidence.  Consistent with the evidence highlighted by Mr. Ivery, the state court of appeals discussed evidence indicating Mr. Ivery appeared angry, was ultimately approached by three men, and fell backward after the men touched and shoved him.  *Ivery*, 2018-Ohio-2177, ¶¶ 4-7.  But the court also noted Mr. Ivery's own testimony that he was fearful when the men approached him and feared for his life when he fired his gun.  *Id.* at ¶ 7.  The appeals court relied on that testimony in finding the trial court did not err in refusing to give an instruction for voluntary manslaughter, which would have required the jury to find Mr. Ivery acted "under the

influence of sudden passion or in a sudden fit of rage" instead of acting out of fear for his life. *Id.* at ¶¶ 11-14.  Mr. Ivery does not dispute that he testified to fearing for his life.  (ECF Doc. 16, p. 5; ECF Doc. 10-31, pp. 81-82.)  He simply recites facts that he asserts could have supported a different determination by the court.  But "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Given the highly deferential standard applicable in federal habeas proceedings, the undersigned finds Mr. Ivery has not shown that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 103).  Thus, Mr. Ivery has not shown that the appellate court decision regarding the voluntary manslaughter instruction was based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, to the extent Mr. Ivery is seeking federal habeas relief that is cognizable under AEDPA, the undersigned recommends that the Court **DENY** Ground One on its merits.

## D.    Grounds Two through Eight Were Procedurally Defaulted

Respondent argues that Mr. Ivery's claims in Grounds Two through Eight should all be dismissed based on procedural default.  (ECF Doc. 7, pp. 17-34.)  For ease of discussion, the undersigned will address multiple grounds together where possible.

### 1.    Legal Standard for Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with

23

federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle*, 456 U.S. at 125 n.28).  In contrast, procedural default applies where state court remedies are no longer available.  *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to

25

the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### 2.    Grounds Two and Three Were Procedurally Defaulted

Grounds Two and Three challenge the sufficiency of the evidence and the dismissal of an African American juror.  (ECF Doc. 1, pp. 11-19.)  Respondent argues that these claims were procedurally defaulted because: (1) the court's findings on direct appeal were not appealed to the Supreme Court of Ohio; (2) the parallel assignments of error in the first App. R. 26(B) proceedings were for ineffective assistance of counsel, and therefore did not preserve the underlying claims asserted in the Petition; and (3) the sufficiency of the evidence arguments raised in the second App. R. 26(B) application were barred by res judicata.  (ECF Doc. 7, pp. 17-19, 25-28.)  Respondent also argues that Mr. Ivery has not shown cause and prejudice to excuse the procedural default (*id.*) and that both claims can be denied on the merits (*id.* at pp. 39-49).

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Although Mr. Ivery challenged the sufficiency of the evidence

26

and the dismissal of an African American juror in his direct appeal (ECF Doc. 7-1, pp. 236, 246-55), he did not seek review of the appellate court's rulings on those assignments of error in his appeal to the Supreme Court of Ohio (*id.* at pp. 370-81).  His failure to pursue those claims through the state's ordinary appellate review procedures resulted in a procedural default.

Mr. Ivery argues that his procedural default should be excused due to the ineffective assistance of his appellate counsel on direct appeal and in his reopened appeal, and further argues that he can show prejudice to excuse any procedural default.  (ECF Doc. 16, pp. 6-7, 12-13.) Although he does not explain his own failure to pursue the relevant claims "through the state's 'ordinary appellate review procedures'" by appealing the rulings on the related assignments of error to the Supreme Court of Ohio (*id.*), his pro se memorandum in support of jurisdiction to the Supreme Court of Ohio stated that he intended to "resubmit" his assignment of error regarding the sufficiency of the evidence "along with some other claims he felt should have been raised in his appeal[] via a *pro se* App.R. 26(B) application for reopening."  (ECF Doc. 7-1, p. 376.)

Mr. Ivery did ultimately file the described App. R. 26(B) application, and the state court of appeals found based on that application "that there is a genuine issue that counsel was ineffective in representing [Mr. Ivery] on appeal," granted Mr. Ivery's application to reopen the appeal, and appointed new counsel to represent him in his reopened appeal.  (*Id.* at pp. 439-40.) However, in its later ruling on the merits of the reopened appeal, the appellate court disagreed with Mr. Ivery's arguments that his attorney rendered ineffective assistance by failing to develop arguments regarding the sufficiency of the evidence and juror removal on direct appeal.  (*Id.* at pp. 538-43, 546-50.)[8]

---

[8] The appellate court in each instance generally disagreed with both Mr. Ivery's legal arguments and his contentions that his attorney rendered ineffective assistance by failing to develop the relevant arguments on direct appeal.  (*Id.*)

To establish "cause" to excuse procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him" and "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). The Supreme Court has explained:

> Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Murray*, 477 U.S. at 492. While "[a]ttorney error that constitutes ineffective assistance of counsel" may serve as "cause" to overcome procedural default, *Coleman*, 501 U.S. at 754, an attorney's "ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error,'" *id.* at 753 (quoting *Murray*, 477 U.S. at 488).

Here, although the state court of appeals initially found "a genuine issue that counsel was ineffective in representing Appellant on appeal" (ECF Doc. 7-1, pp. 439-40), it ultimately disagreed with Mr. Ivery's assignments of error and his arguments that his appellate attorney rendered ineffective assistance, confirmed its prior decision, and affirmed the trial court's judgment (*id.* at pp. 538-43, 546-48). The Supreme Court of Ohio has explained that "the determination that a *genuine issue* of ineffective assistance of appellate counsel exists is not a determination of ineffective assistance of appellate counsel."[9] *State v. Leyh*, 166 Ohio St. 3d 365, 375 (2022) (emphasis in original). Thus, while the state court record raises some questions

---

[9] Instead, "[u]nder App.R. 26(B), the determination whether appellate counsel was deficient and prejudiced the applicant is to be made after the appeal has been reopened and the parties are afforded the opportunity to have counsel, transmit the necessary record, and substantively brief the issues." *Leyh*, 166 Ohio St. 3d at 375 (citing App.R. 26(B)(6) through (9)). "To prevail, the applicant will still have to establish that ineffective assistance of appellate counsel undermined at least one meritorious direct-appeal issue." *Id.*

regarding the effectiveness of Mr. Ivery's counsel on direct appeal, the state courts did not find

that that Mr. Ivery's appellate counsel was ineffective on direct appeal.

Ultimately, this Court need not determine whether, or to what extent, any ineffective

assistance by counsel on direct appeal amounted to "cause" to excuse the procedural default of

Grounds Two or Three because Mr. Ivery has not shown that "actual prejudice" resulted from the

alleged violations of federal law.  *See Coleman*, 501 U.S. at 750 (explaining a petitioner must

show both "cause" to excuse a procedural default and actual prejudice resulted from the alleged

violation).  The analysis for each ground is addressed separately below.

### i.    Petitioner Has Not Shown Actual Prejudice Sufficient to Excuse the Procedural Default of Ground Two

Mr. Ivery contends that prejudice is established here because the "ground for relief has

merit."  (ECF Doc. 16, p. 12.)  This argument must fail.  Although the appellate court on direct

appeal declined to address the sufficiency of the evidence due to the lack of cited authority to

support the assignment of error (ECF Doc. 7-1, pp. 335-36), the appellate court in the reopened

appeal considered the sufficiency of the evidence argument on its merits, finding as follows:

> {¶6} In his first assignment of error, Mr. Ivery argues that the State failed to present sufficient evidence to support his convictions for aggravated murder, murder, attempted murder, and felonious assault. His argument in this regard is primarily based upon the State's alleged failure to prove the mens rea for those crimes. He also argues that his prior appellate counsel rendered ineffective assistance by failing to develop this argument in his prior appeal. For the reasons that follow, this Court disagrees.

> {¶7} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct a de novo review, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones,* 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

{¶8} Because Mr. Ivery's challenge to the sufficiency of the evidence is primarily based upon the State's alleged failure to prove the mens rea for his convictions, we begin our analysis by setting forth the required mens rea for those crimes. The jury convicted Mr. Ivery of aggravated murder under Section 2903.0l(A), murder under Sections 2903.02(A) and 2903.02(B), attempted murder under Sections 2923.02 and 2903.02(A), and felonious assault under Section 2903.11(A)(2). Aggravated murder under Section 2903.01(A) and murder under Section 2903.02(A) require the State to prove that the defendant acted "purposely[,]" with aggravated murder having the additional requirement that the State prove "prior calculation and design[.]" Murder under Section 2903.02(B) (with the predicate offense of felonious assault) requires the State to prove that the defendant acted "knowingly[.]" *See State v. Fry,* 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 43 (stating that "the predicate offense contains the mens rea element for felony murder."); R.C. 2903.11(A)(2). Attempted murder under Sections 2923.02(A) and 2909.02(A) requires the State to prove that the defendant acted "purposely or knowingly[.]" Lastly, felonious assault under Section 2903.11(A)(2) requires the State to prove that the defendant acted "knowingly[.]"

{¶9} Section 2901.22 defines "purposely" and "knowingly" as follows:

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(A) and R.C. 2901.22(B). "In determining whether a defendant acted purposely, '[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances.'" *State v. Patel,* 9th Dist. Summit No. 24030, 2008-Ohio-4693, ¶ 34, quoting *State v. Sullivan,* 9th Dist. Medina No. 07CA0076-M, 2008-Ohio-2390, ¶ 10. Similarly, "whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." (Alteration omitted.) *State v. Murphy,* 9th Dist. Summit No. 24753, 2010-Ohio-1038, ¶ 15, quoting *State v. Huff,* 145 Ohio App.3d 555, 563 (1st Dist.2001). The difference between "knowingly" and "purposely" is that "'knowingly' does not require the offender to have the specific intent to cause a certain *result[.]*" (Emphasis sic.) *Murphy* at ¶ 15, quoting

30

*State v. Powell,* 11th Dist. Lake No. 2007-1-187, 2009-Ohio-2822, ¶ 49. That said, "if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." (Alteration omitted.) *Murphy* at ¶ 15, quoting *State v. Dixon,* 8th Dist. Cuyahoga No. 82951, 2004-Ohio-2406, ¶ 16.

{¶10} In support of his assignment of error, Mr. Ivery first argues that the State failed to present sufficient evidence to support his aggravated-murder conviction because the State failed to present sufficient evidence to establish that he acted purposely with prior calculation and design to kill Justin. Section 2903.01(A) governs aggravated murder and provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another[.]" In determining whether a defendant acted "purposely," "[a] jury may infer a defendant's purpose to cause death when the defendant inflicts a wound with a deadly weapon in a manner that appears to be calculated to destroy life or inflict great bodily harm." *State v. Shorter,* 7th Dist. Mahoning No. 11 MA 42, 2012-Ohio-2701, ¶ 16, citing *State v. Stallings,* 89 Ohio St.3d 280, 291 (2000). Relevant to this case, "a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death[.]" *State v. Widner,* 69 Ohio St.2d 267, 270 (1982). Further, as this Court has stated, "'[p]rior calculation and design' denotes 'sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation' coupled with circumstances that demonstrate 'a scheme designed to implement the calculated decision to kill[.]'" *State v. Guerra,* 9th Dist. Lorain No. 12CA010188, 2013-Ohio-5367, ¶ 6, quoting *State v. Cotton,* 56 Ohio St.2d 8 (1978), paragraph three of the syllabus. A prolonged period of deliberation is unnecessary, and "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley,* 93 Ohio St.3d 253, 264 (2001); *State v. Hairston,* 9th Dist. Lorain No. 0SCA008768, 2006-Ohio-4925, ¶ 80. "There is no bright-line test for determining whether a defendant acted with prior calculation and design, so courts consider the totality of the circumstances in each case," which can include whether the defendant gave thought or preparation to choosing the murder weapon. *Guerra* at ¶ 6, citing *State v. Taylor,* 78 Ohio St.3d 15, 19 (1997).

{¶11} The State presented evidence at trial indicating that Mr. Ivery left the bar after an argument, retrieved a gun, and then returned to the bar about eight minutes later. Upon his return, he told at least one bar patron that he was not alone anymore, and lifted his shirt several times to reveal a gun tucked into his waistband. As Justin and other bar patrons approached him, Mr. Ivery drew the gun from his waistband. A struggle ensued, and Mr. Ivery fired several shots, two of which struck Justin in the torso. Justin later died as a result of those wounds. Viewing the totality of the circumstances in a light most favorable to the State, this Court concludes that a rational trier of fact could have found the essential elements of aggravated murder proven beyond a reasonable doubt.

{¶12} Mr. Ivery next argues that the State presented insufficient evidence to support his murder conviction because it failed to establish that he purposely killed Justin. Section 2903.02(A) governs murder and provides that "[n]o person shall purposely cause the death of another[.]" Given this Court's determination that the State presented sufficient evidence to support his aggravated-murder conviction, we likewise determine that the State presented sufficient evidence to support Mr. Ivery's murder conviction. *See State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 36 (noting that murder is a lesser-included offense of aggravated murder, and that "[t]he sole difference is that prior calculation and design is absent from murder.").

{¶13} Next, Mr. Ivery argues that the State presented insufficient evidence to support his felony-murder conviction. Section 2903.02(B) governs felony murder and provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not [voluntary manslaughter or involuntary manslaughter.]" The predicate offense in this case was felonious assault under Section 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Section 2903.11(D)(l)(a) provides that felonious assault is a first or second degree felony depending upon whether the victim "is a peace officer or an investigator of the bureau of criminal identification and investigation[.]" Either way, "[e]vidence that a defendant fired a gun in a person's direction is sufficient evidence that the defendant acted knowingly for the purpose of a felonious assault conviction." *State v. Fox,* 10th Dist. Franklin No. l7AP-295, 2018-Ohio-501, ¶ 14.

{¶l4} Here, the State presented evidence demonstrating that Mr. Ivery fired his gun in Justin's direction, that Justin was shot twice in the torso, and that he died as a result of those wounds. Viewing this evidence in a light most favorable to the State, this Court concludes that a rational trier of fact could have found the essential elements of felony murder proven beyond a reasonable doubt. To the extent that Mr. Ivery has separately challenged his felonious-assault conviction based upon the State's alleged failure to prove the required mens rea, we likewise reject that argument.

{¶15} Lastly, Mr. Ivery argues that the State presented insufficient evidence to support his attempted-murder conviction. Sections 2923.02(A) and 2903.02(A) govern attempted murder and provide that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in * * * [murder.]" "When a person fires a gun into a group of people, one can infer intent to cause death." *State v. Hubbard,* 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 23.

{¶16} Here, Mr. Ivery fired his gun in a crowded bar. The bullets struck and/or grazed several bar patrons. Viewing this evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of attempted murder proven beyond a reasonable doubt. *See Hubbard* at ¶ 19-24 (holding that sufficient evidence existed to support the defendant's attempted-murder conviction when the State presented evidence indicating that the defendant fired five shots in rapid succession toward a group of people, killing one person); *State v. Banks,* 10th Dist. Franklin No. 0lAP-1179, 2002-Ohio-3341, ¶ 26 (holding that sufficient evidence existed to support the defendant's attempted-murder conviction when the State presented evidence indicating that the defendant fired a gun randomly into a crowded bar, injuring one patron and paralyzing another).

{¶17} To the extent that the arguments contained in Mr. Ivery's first assignment of error challenge the weight, not the sufficiency, of the evidence, he has not developed arguments within his first assignment of error to support a manifest-weight challenge. This Court, therefore, will not consider those arguments. *See State v. Pleban,* 9th Dist. Lorain No. 10CA009789, 201 l-Ohio-3254, ¶ 41 (declining to address an underdeveloped argument that was beyond the scope of the captioned assignment of error).

{¶18} In light of the foregoing, Mr. Ivery's first assignment of error is overruled.

(ECF Doc. 7-1, pp. 537-43.)

Mr. Ivery's sufficiency of the evidence argument was therefore heard, considered, and ultimately rejected by the state court of appeals on the merits.  Thus, even if the failure of Mr. Ivery's appellate attorney to properly brief the issue on direct appeal did amount to "cause" to support exusing any procedural default, those actions did not result in "actual prejudice" because the appellate court ultimately considered and decided the issue on its merits.

In challenging the above state court findings, Mr. Ivery notes that the appeals court did not cite to the record in support of its findings and asserts that there was insufficient evidence to support convictions for first degree felonious assault or the peace officer specifications because the two victims classified as peace officers were not performing their official duties on the night in question.  (ECF Doc. 16, pp. 8-9.)  But he cites to no Supreme Court authority establishing that it is a violation of clearly established federal law for an appellate court to make factual

33

findings without citing to the relevant records, or for the relevant convictions to be upheld where peace officers were not in the process of performing their official duties.[10]

Mr. Ivery also argues that the evidence precludes a finding of prior calculation and design given evidence that he was surrounded and backed away from the confrontation, and evidence that he had a gun even before he returned to the bar.  (ECF Doc. 16, pp. 10-11.)  He thus appears to challenge the court's finding that: "The State presented evidence at trial indicating that Mr. Ivery left the bar after an argument, underlined retrieved a gun, and then returned to the bar about eight minutes later. Upon his return, he told at least one bar patron that he was not alone anymore, and lifted his shirt several times to reveal a gun tucked into his waistband." (ECF Doc. 7-1, p. 541 (emphasis added).)  But he has not rebutted the presumption that the state court factual findings are correct, in particular the testimony outlined by the court on direct appeal that Mr. Ivery said upon his return to the bar that he was "not alone anymore," even though he did not have anyone with him, and then displayed the barrel of a gun in his waistband.  *Ivery*, 2018-Ohio-2177, ¶ 5; *see Burt*, 571 U.S. at 18 (noting a petitioner "bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence'") (citing 28 U.S.C. § 2254(e)(1)).  Thus, Mr. Ivery has failed to show that the appellate court's findings in the reopened appeal were based on an unreasonable determination of the facts in light of the evidence presented.

Having considered the findings of the state court regarding the sufficiency of the evidence in light of the AEDPA standards, the undersigned concludes that Mr. Ivery has failed to demonstrate actual prejudice sufficient to excuse his procedural default of Ground Two.[11]

---

[10] Under state law, the application of the relevant statute, R.C. 2903.11(A)(2), is not limited "only to those accused of assaulting a peace officer who was 'in the performance of [his] official duties." *State v. Duvall*, 1997 WL 361698, at *3 (Ohio Ct. App. June 6, 1997).  Instead, "the criminality of an assault on a peace officer under R.C. 2903.11 . . . is enhanced regardless of when and under what circumstances the assault occurred." *Id.*

[11] Mr. Ivery's additional arguments regarding prejudice caused by his counsel in the reopened appeal and the lack of a corrective process (ECF Doc. 16, pp. 12-13) are also unavailing for the reasons discussed in Section III.D.4., *infra*.

### ii.     Petitioner Has Not Shown Prejudice Sufficient to Excuse the Procedural Default of Ground Three

Although the appellate court on direct appeal addressed Mr. Ivery's challenge to the removal of an African-American juror under *Batson*, finding the standard cited by Mr. Ivery's appellate counsel was inapplicable because the juror was not removed via a peremptory challenge (ECF Doc. 7-1, pp. 336-37), the appellate court in the reopened appeal considered the merits of his challenge to the juror's "for cause" removal, finding as follows:

{¶24} In his third assignment of error, Mr. Ivery argues that the trial court violated his constitutional rights by erroneously removing a juror for cause. He also argues that his prior appellate counsel rendered ineffective assistance by failing to develop an argument in this regard in his prior appeal. For the reasons that follow, this Court disagrees.

{¶25} "The Revised Code and the Rules of Criminal Procedure both include catchall provisions allowing prospective jurors to be challenged for cause if they are 'unsuitable for any other cause to serve as a juror.'" *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 83, quoting R.C. 2945.25(O) and Crim.R. 24(C)(14). "A trial court's application of this provision is reversible only for an abuse of discretion." *Id.* "An abuse of discretion occurs if the trial court acted in a manner that was arbitrary, unreasonable, or unconscionable." *State v. Huguley,* 9th Dist. Summit No. 28322, 2017-Ohio-8300, ¶ 15, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶26} This Court explained the trial court's removal of the juror at issue in our prior decision as follows:

[A]fter the trial had commenced, the State moved to remove an African American juror for cause because monitoring of Ivery's jail calls indicated that the juror approached a woman who had been in the courtroom and inquired about a friend she was with the day before. The State argued that the juror violated the trial court's admonition to not communicate with anyone in the courtroom. The trial court questioned the juror about the interaction, who initially denied that he had communicated with anyone. After the trial court provided additional information, the juror eventually admitted that he had talked to the woman, but indicated it had nothing to do with the case; he was only inquiring about the woman's friend in a flirtatious manner.

The trial court determined that the juror's failure to be forthright with information about the interaction, including the fact that he only admitted to the interaction after the trial court confronted him with additional

35

information, indicated that the juror was "deceptive and that he lied to the Court * * *." The trial court made clear that this was not a preemptory challenge and was "not an issue of race" that implicated *Batson.* The trial court then found that the "juror * * * violated the Court's order about contacting people outside of the courtroom and * * * got caught lying to the Court." It, therefore, removed the juror from the case for that reason.

*Ivery,* 2018-Ohio-2177, at ¶ 20-21.

{¶27} Mr. Ivery argues that the trial court failed to consider whether the juror at issue could still serve as an impartial juror, and cites Section 2945.25(B) in support of his position. That Section provides that a juror in a criminal case may be challenged for cause if the juror "is possessed of a state of mind evincing enmity or bias toward the defendant or the state[.]" R.C. 2945.25(B). That Section further provides that:

> no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial[.]

*Id*. Mr. Ivery also argues that the trial court erroneously applied the less-stringent standard applicable to peremptory challenges, and not the higher standard applicable to challenges for cause. Having reviewed the record, this Court disagrees. This is not a situation contemplated under Section 2945.25(B) wherein a juror previously expressed a bias, and then the trial court did not further examine the juror to determine if that juror could still render an impartial verdict. Instead, as the trial court made clear on the record, the trial court removed the juror for cause on the basis that the juror violated its admonition to not communicate with anyone in the courtroom, and then lied to the court about doing so. Under these facts, this Court cannot say that the trial court abused its discretion when it removed the juror at issue for cause. Mr. Ivery's third assignment of error is overruled.

(ECF Doc. 7-1, pp. 546-48.)

Mr. Ivery's challenge to the removal of an African-American juror for cause was therefore heard, considered, and rejected by the state court of appeals on the merits. Thus, even if the failure of Mr. Ivery's attorney to properly brief the issue on direct appeal did amount to "cause" to support exusing any procedural default, those actions did not result in "actual prejudice" because the appellate court ultimately considered and decided the issue on its merits.

In challenging the above state court findings, Mr. Ivery disputes the court's finding that there was an order precluding jurors from "speak[ing] to people in a general sense," and asserts that the trial court incorrectly found the juror did not follow instructions.  (ECF Doc. 16, p. 15.)  But Mr. Ivery has not rebutted the presumption that the state court factual findings are correct, in particular the finding that the trial court "determined that the juror's failure to be forthright with information about the interaction, including the fact that he only admitted to the interaction after the trial court confronted him with additional information, indicated that the juror was 'deceptive and that he lied to the Court,'" and that the trial court removed the juror not only because he violated a court order about contacting people outside the courtroom, but also because he "'got caught lying to the Court.'"  (ECF Doc. 7-1, p. 547 (quoting *Ivery*, 2018-Ohio-2177, at ¶ 21).)  While Mr. Ivery may interpret the factual record differently, the undersigned concludes that he has not met his burden to rebut the state court's factual determinations by clear and convincing evidence.  Thus, Mr. Ivery has not shown that the appellate court's findings in the reopened appeal were based on an unreasonable determination of the facts in light of the evidence.

Mr. Ivery also argues that the court overlooked the juror's confirmation that he could remain impartial.  (ECF Doc. 16, pp. 15-16.)  But the state appellate court did address this issue (*see* ECF Doc. 7-1, p. 547), and Mr. Ivery has not cited to Supreme Court authority establishing that it was a violation of clearly established federal law for the appellate court to uphold the trial court's dismissal of the juror in the described circumstances.

Having considered the findings of the state court regarding the dismissal of the juror in light of the AEDPA standards, the undersigned finds Mr. Ivery has failed to demonstrate actual prejudice sufficient to excuse his procedural default of Ground Three.

### iii. Petitioner Has Not Shown a Manifest Injustice to Excuse Default

Absent a showing of cause and prejudice, a procedural default may also be excused upon a showing that a failure to consider the relevant claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren*, 440 F.3d at 764 (quoting Murray, 477 U.S. at 496). For an actual innocence claim to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He must further "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. This is intended to permit petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice." *Id.* (internal quotations omitted). Importantly, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Here, there is no dispute that Mr. Ivery carried a firearm into a bar, showed the firearm to others, took out his firearm and fired several shots, and that those shots caused the death or injury of several victims in the bar. Mr. Ivery also has not identified new reliable evidence that was not presented at trial to support a finding of factual innocence, and has certainly not demonstrated that "no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. The undersigned therefore concludes that Mr. Ivery has not met his burden to show that a failure to consider the merits of his procedurally defaulted claims would result in a fundamental miscarriage of justice.

38

For the reasons set forth above, the undersigned finds that Grounds Two and Three were procedurally defaulted, and that Mr. Ivery has not met his burden to show actual prejudice or a fundamental miscarriage of justice to excuse the defaults.  Accordingly, the undersigned recommends that the Court **DISMISS** Grounds Two and Three with prejudice.

### 3.      Ground Four Was Procedurally Defaulted

Ground Four challenges the trial court's refusal to instruct the jury on the lesser included offenses of reckless and negligent homicide.  (ECF Doc. 1, pp. 19-20.)  Respondent argues that this claim was procedurally defaulted because: (1) the appellate court's findings on direct appeal were not appealed to the Supreme Court of Ohio; (2) the parallel assignment of error in the first App. R. 26(B) proceedings was a claim for ineffective assistance of counsel, and did not preserve the underlying claim in the Petition; and (3) the appellate court's findings as to reckless homicide in the reopened appeal were not appealed to the Supreme Court of Ohio.  (ECF Doc. 7, pp. 17-19, 28-29.)  Respondent also argues that Mr. Ivery did not show cause and prejudice to excuse the procedural default (*id.*) and that the claim can be denied on the merits (*id.* at pp. 49-52).

As discussed above, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston*, 282 F.Supp.2d at 661.  Mr. Ivery challenged the trial court's failure to instruct the jury on reckless homicide in his direct appeal (ECF Doc. 7-1, pp. 236, 242-46), and the appellate court rejected the argument after considering it on the merits (*id.* at pp. 332-34), but Mr. Ivery did not seek review of the appellate court's ruling to the Supreme Court of Ohio (*id.* at pp. 370-81), resulting in a procedural default.  As to negligent homicide, Mr. Ivery did not challenge the

trial court's refusal to give a negligent homicide instruction in the direct appeal, let alone pursue that claim through ordinary appellate review procedures.

Mr. Ivery does not describe the reasons for his procedural default on the negligent and reckless homicide claims in his Petition or Traverse, and his pro se memorandum in support of jurisdiction to the Supreme Court of Ohio simply stated that he intended to present "other claims he felt should have been raised in his appeal[] via a *pro se* App.R. 26(B) application for reopening." (ECF Doc. 7-1, p. 376.)  He wrote in his 26(B) application for reopening that he intended to challenge the trial court's refusal to instruct the jury on reckless homicide and negligent homicide, but did not explain his prior failure to raise the negligent homicide claim on direct appeal or his failure to appeal the appellate court's reckless homicide ruling to the Supreme Court of Ohio.  (*Id.* at pp. 428-29.)  The brief submitted by Petitioner's attorney in the reopened appeal then challenged only the refusal to instruct the jury on reckless homicide (*id.* at pp. 447, 465-68), which the appellate court again considered and found lacking in merit, citing to the the prior appellate findings (*id.* at pp. 548-50).  Mr. Ivery also failed to appeal the ruling from the reopened appeal to the Supreme Court of Ohio (*id.* at 560-71), and did not explain the reasons for his additional procedural default.

To establish "cause" to excuse procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him" and "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).  Here, Mr. Ivery has not made even a basic showing that objective external factors prevented him from raising his negligent homicide argument on direct appeal and/or from challenging the appellate court's findings regarding his reckless homicide argument on direct appeal.  He therefore cannot establish "cause" to overcome

40

the procedural default of the claim in Ground Four.  Further, considering the appellate court's ruling on Mr. Ivery's challenge to the court's refusal to give jury instructions for voluntary manslaughter or reckless homicide on direct appeal, as discussed in Section III.C.2., *supra*, Petitioner has also failed to show that "actual prejudice" resulted from the alleged violation of federal law.  Additionally, for the reasons set forth in Section III.D.2.iii., *supra*, the undersigned finds Petitioner has not demonstrated a manifest injustice to excuse the default.

Mr. Ivery's assertion that his counsel in the reopened appeal erred by arguing the reckless homicide claim under a "plain error" standard, instead of the more favorable "harmless error" standard (ECF Doc. 16, p. 17), does not impact the analysis of cause and prejudice because that alleged error occurred well after Mr. Ivery had already procedurally defaulted by failing to raise the claim in his direct appeal and/or to pursue it "through the state's 'ordinary appellate review procedures'" to the Supreme Court of Ohio.[12]  *Williams*, 460 F.3d at 806.  An alleged error cannot establish "cause" to excuse the procedural default when it occurred well after that default, since the later error could not have "impeded [Mr. Ivery's prior] efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753.

For the reasons set forth above, the undersigned finds that Ground Four was procedurally defaulted, and that Mr. Ivery has not met his burden to show cause, actual prejudice, or a fundamental miscarriage of justice to excuse the default.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four with prejudice.

---

[12] Further, as discussed in Section III.D.4., *infra*, an error by Mr. Ivery's appointed counsel in the App. R. 26(B) proceedings cannot serve as "cause" to excuse a procedural default because Mr. Ivery does not have a constitutional right to counsel in collateral proceedings under App. R. 26(B).  Mr. Ivery's further arguments regarding the lack of a "corrective process" (ECF Doc. 16, pp. 17-18), are also considered and rejected in Section III.D.4., *infra*.

### 4.        Grounds Five through Eight Were Procedurally Defaulted

Grounds Five, Six, Seven, and Eight allege that trial counsel was ineffective in failing to raise certain evidence / objections, and also allege due process violations relating to Mr. Ivery's self-defense claim, the jury instruction on self-defense, and the trial court's response to a jury request for further information.  (ECF Doc. 1, pp. 21-32.)  Respondent argues that Grounds Five through Eight must be dismissed as procedurally defaulted because they were not raised in the direct appeal.  (ECF Doc. 7, pp. 18-19, 30-34.)  Mr. Ivery does not explain why he failed to raise these claims in his direct appeal, except to generally reference "Ineffective Assistance of Appellate Counsel" in his Petition.  (ECF Doc. 1, pp. 23, 25, 27, 29.)  In his Traverse, he argues more specifically that his right to the effective assistance of counsel was violated because the attorney appointed to represent him in the reopened appeal under App. R. 26(B) did not include these assignments of error in his appellate brief.  (ECF Doc. 16, pp. 19, 21, 24-27.)  Mr. Ivery also argues that the claims must be reviewed due to the lack of a state corrective process.  (*Id.*)

Respondent responds that the first App. R. 26(B) application preserved only the claims of ineffective assistance of appellate counsel, and that the underlying claims are barred from habeas review because they were not fairly presented in the state courts.  (ECF Doc. 7, pp. 18-19 (citing *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008)).  Further, Respondent argues that any claims asserted in the second App. R. 26(B) application were also procedurally defaulted because Ohio law precludes successive applications for reopening under App. R. 26(B), and the state court of appeals enforced this rule and found the second application barred by res judicata.  (*Id*. at p. 19 (citing *State v. Twyford*, 106 Ohio St. 3d 176 (2005); ECF Doc. 7-1, pp. 664-65).)

Turning first to the requirement that Mr. Ivery "raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures'" to avoid procedural default, *Williams*, 460 F.3d at 806, it is undisputed that Mr. Ivery failed to present Grounds Five

through Eight in his direct appeal, and accordingly failed to pursue them through Ohio's ordinary appellate review procedures.  Therefore, he has procedurally defaulted those claims.

To establish "cause" to excuse that procedural default, Mr. Ivery must identify "something external . . . that cannot be fairly attributed to him" sufficient to "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule" by raising the claims in his direct appeal.  *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).  While he generally asserted in his first App. R. 26(B) application that his appellate counsel had "failed to raise winnable issues in the direct appeal," and highlighted some parts of the claims in Grounds Five through Eight as issues he wished to raise on appeal (ECF Doc. 7-1, pp. 420, 427-28), he did not otherwise explain what external factor(s) prevented him from raising those same challenges in his direct appeal.[13]  Based on the record before this Court, the undersigned concludes that Mr. Ivery has failed to show "cause" to warrant excusing his procedural default as to Grounds Five through Eight.

Rather than presenting argument to explain the cause for his failure to assert the claims in Grounds Five through Eight in his direct appeal, Mr. Ivery focuses on the alleged ineffective assistance of appellate counsel in the first App. R. 26(B) proceeding, where his attorney failed to raise the relevant claims in a reopened appeal.  (ECF Doc. 16, pp. 19, 21, 24-27.)  This argument is unavailing for numerous reasons.  First, as discussed in Section III.D.3., *supra*, a "cause" that

---

[13] Mr. Ivery also did not assert the claims from Grounds Five through Eight in the appellate brief for his reopened appeal, which was filed by his appointed attorney.  (*Id.* at pp. 442-68.)  Although Mr. Ivery attempted to strike the brief and dismiss his appointed counsel, that request was denied.  (*Id.* at p. 733.)  To the extent that Mr. Ivery may seek to argue that the denial of his request to proceed pro se constitutes cause to excuse his procedural default, the Sixth Circuit has found such an argument to be without merit. *See Teats v. Genovese*, No. 22-5365, 2022 WL 22317601, at *4 (6th Cir. Nov. 4, 2022).  In *Teats*, the Sixth Circuit explained that: "[A] defendant has no constitutional right to self-representation after trial." 2022 WL 22317601, at *5 (citing *Martinez v. Ct. of Appeal of Calif.*, 528 U.S. 152, 163 (2000)).  The court further explained that it "has held that a petitioner may not rely on a state appellate court's refusal to permit him to file a pro se supplemental brief on direct appeal as cause to excuse a procedural default," and that the "same rationale would apply to a state appellate court's refusal to permit a pro se supplemental brief in a post-conviction appeal." *Id.* (citing *McMeans*, 228 F.3d at 684).

post-dates the relevant default is inadequate to identify the external factors that caused the

default.  Second, while attorney error rising to the level of ineffective assistance may sometimes

support a finding of "cause" to excuse procedural default, *Coleman*, 501 U.S. at 754, a

"constitutional claim of ineffective assistance of counsel" may only be asserted "at a stage of the

proceedings when there is a right to counsel under the Sixth Amendment," *Smith*, 463 F.3d at

433 (citing *Coleman*, 501 U.S. at 752).  Here, Mr. Ivery did not have a right to assistance of

counsel during the App. R. 26(B) proceedings, *Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir.

2012), because the proceedings are "a collateral postconviction remedy and . . . not part of the

original appeal," *Morgan v. Eads*, 104 Ohio St. 3d 142, 147 (2004).[14]  *See also Loch v. Hurley*,

No. 2:05-CV-241, 2006 WL 689069, at *1-2 (S.D. Ohio Mar. 14, 2006) ("Ohio courts have been

unanimous in treating Rule 26(B) applications as part of collateral review.").  Because Mr. Ivery

did not have a constitutional right to representation by counsel in his reopened appeal, no

attorney error in prosecuting the reopened appeal can establish "cause" to excuse the procedural

default.  *See Coleman*, 501 U.S. at 757 (finding attorney error cannot excuse procedural default

in a federal habeas case where there was no constitutional right to counsel).

The fact that Mr. Ivery later articulated the claims from Grounds Five through Eight in a

second App. R. 26(B) application (*see* ECF Doc. 7-1, pp. 640-51) does not change this analysis,

since the state court of appeals denied the second application as barred by res judicata (*see id.* at

pp. 764-65).  Under the four-prong analysis in *Maupin v. Smith,* a claim is procedurally barred

---

[14] While Ohio has chosen by rule to appoint counsel when an application to reopen is granted, *see* App. R.
26(B)(6)(a), that rule "is not . . . compelled by the United States Constitution."  *Morgan*, 104 Ohio St. 3d at 146.
"The Supreme Court of the United States has 'declined to extend the right to counsel beyond the *first* appeal of a
criminal conviction.'"  *Id.* (quoting *Coleman*, 501 U.S. at 756) (emphasis added).  "And nothing in the United States
Constitution requires that the state provide counsel to every indigent criminal defendant who wants to challenge the
work of his . . . original appellate attorney."  *Id.* (citing and quoting *Pennsylvania v. Finley*, 481 U.S. 551, 555
(1987) ("the right to appointed counsel extends to the first appeal of right, and no further")).

where a petitioner fails to comply with an applicable state procedural rule, the state court enforces the rule, the procedural rule is an adequate and independent ground to foreclose review, and the petitioner cannot demonstrate cause and prejudice to excuse the default.  785 F.2d at 138. In other words, "[i]f, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806 (citing *Maupin*, 785 F.2d at 138).  Here, the state court relied on the doctrine of res judicata, an independent and adequate ground for precluding relief, when it declined to reach the merits of the claims in the second App. R. 26(B) application.  (ECF Doc. 7-1, pp. 764-65.)  Thus, the claims asserted by Mr. Ivery in his second App. R. 26(B) application were procedurally defaulted.[15]  *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 223-25 (6th Cir. 2019) (finding claims in second App. R. 26(B) application procedurally defaulted under *Maupin*).

Finally, Mr. Ivery's argument regarding the lack of a "State corrective process" to challenge the effectiveness of appellate counsel in an App. R. 26(B) proceeding (*see* ECF Doc. 16, pp. 19, 24, 25, 26-27) also lacks merit.  Mr. Ivery cites to 28 U.S.C. § 2254(b)(1)(B), which states: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . there is an absence of available State corrective process[.]"  *See* 28 U.S.C. § 2254(b)(1)(B).  Mr. Ivery argues that his inability to file a successive App. R. 26(B) application to assert claims of ineffective assistance

---

[15] As discussed above, Mr. Ivery's allegations regarding the alleged ineffective assistance of his attorney in the first App. R. 26(B) proceedings cannot establish cause to excuse this default because Mr. Ivery did not have a constitutional right to representation by counsel in those proceedings.  *See Coleman*, 501 U.S. at 757.  Further, the assertion of an ineffective assistance of counsel claim in an App. R. 26(B) application does not preserve the underlying substantive claims.  *See id.* at 218 (citing *Davie*, 547 F.3d at 312); *compare with Johnson v. Marquis*, No. 1:17 CV 311, 2017 WL 2832901, at *4 (N.D. Ohio June 30, 2017) (explaining that "a habeas petitioner cannot 'resurrect' a completely defaulted claim by raising it for the first time in a 26(B) application, *unless the court of appeals grants the application and reopens the judgment*") (emphasis added).

of counsel relating to a prior App. R. 26(B) proceeding amounts to a lack of "State corrective

process" that warrants excusing his related procedural defaults.

The Sixth Circuit rejected a similar argument in *Smith v. Warden, Toledo Corr. Inst.*,

explaining:

> Smith also argues that any procedural default on his part should be excused because
> of the "absence of available State corrective process" or "circumstances ... that
> render such process ineffective to protect the rights of the applicant." 28 U.S.C. §
> 2254(b)(1)(B).  He misconstrues this exception. It is a statutory exception to the
> requirement to "exhaust[ ] the remedies available in the courts of the State." *Id.* §
> 2254(b)(1)(A). But, though the two are sometimes confused, "[e]xhaustion and
> procedural default ... are distinct concepts.... Where state court remedies are no
> longer available to a petitioner because he or she failed to use them within the
> required time period, procedural default and not exhaustion bars federal court
> review." *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28,
> 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). This is because a "petitioner who has
> defaulted his federal claims in state court meets the technical requirements for
> exhaustion; there are no state remedies any longer 'available' to him." *Coleman*,
> 501 U.S. at 732, 111 S.Ct. 2546.

*Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 n. 2 (6th Cir. 2019); *see also Teats*,

2022 WL 22317601, at *5 (explaining that the statutory exhaustion exception found in 28 U.S.C.

§ 2254(b)(1)(B)(i) did not excuse a procedural default) (citing *Smith*, 780 F. App'x at 225 n.2;

*Williams*, 460 F.3d at 806).  The undersigned similarly concludes that Mr. Ivery's reliance on

exceptions to the exhaustion requirement under 28 U.S.C. § 2254 is misplaced, and that the

alleged lack of state corrective process does not excuse Mr. Ivery's procedural defaults.

As discussed in Section III.D.2.iii, *supra*, the undersigned also finds Mr. Ivery has not

demonstrated a manifest injustice to warrant excusing the procedural defaults.  And because Mr.

Ivery has failed to demonstrate the requisite cause to excuse his procedural defaults, it is not

necessary for this Court to consider the issue of prejudice.  *See Engle*, 456 U.S. at 134, n. 43.

For the reasons set forth above, the undersigned finds Grounds Five through Eight were

procedurally defaulted, and that Mr. Ivery has not met his burden to show cause or a fundamental

miscarriage of justice to excuse the default.  Accordingly, the undersigned recommends that the Court **DISMISS** Grounds Five through Eight with prejudice.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DENY** Ground One with prejudice and **DISMISS** Grounds Two through Eight with prejudice.


June 2, 2025


*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE



## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).