UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENAN IVERY, *Pro Se*, | ) | Case No.: 5:22 CV 1586 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| TIM McCONAHAY, WARDEN, | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is *Pro Se* Petitioner Kenan Ivery's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF No. 1.) Under Local Rule 72.2(b)(2), the case was referred to Magistrate Judge Amanda M. Knapp ("Judge Knapp") for the preparation of a Report and Recommendation ("R&R"). (ECF No. 3.) For the reasons discussed below, the court adopts Judge Knapp's recommendations, dismissing the Petition with prejudice, and declining to issue a Certificate of Appealability.

**I. BACKGROUND**

**A.     State Court Convictions and Sentencing**

Kenan Ivery is currently incarcerated at the Mansfield Correctional Institution for aggravated murder with a firearm, and related offenses. (ECF No. 7 Ex. 1, State Ct. J. at PageID 161–67.) Following a jury trial in the Summit County Court of Common Pleas, Ivery was sentenced to life imprisonment without the possibility of parole, plus 65 years. (*Id*. at PageID 166.) The factual

findings of his crimes at trial were explained at length by the state appellate court, and recounted in the Report and Recommendation. (R. & R. at PageID 6283–85.) Based on these facts, as determined by the state court, a cursory summary of the events is provided here.[1]

On November 15, 2014, Ivery was a patron at Papa Don's Pub in Akron, Ohio. (*Id*. at PageID 6283.) The bar manager testified that Ivery made a female patron uncomfortable with his advances, and then became angry and refused to calm down. (*Id*.) Ivery was asked to leave, and one bar employee overheard Ivery state that he would "smack that bitch," before he exited the premises. (*Id*.) Roughly eight minutes after leaving, Ivery returned to the bar with his firearm. (*Id*.) He told the bar manager that he was "not alone anymore," and revealed his gun in his waistband. (*Id.* at PageID 6284.) The bar manager then sought assistance from Justin Winebrenner ("Officer Winebrenner"), who was an off-duty Akron police officer. (*Id.*) When Ivery began to pull the gun out of his waistband, Officer Winebrenner and two other bar patrons surrounded Ivery and attempted to take his gun from him. (*Id*.) Ivery and the men attempting to subdue him fell into a "big dog pile" near the door. (*Id*.) At this point, Ivery fired several shots, and then fled the scene. (*Id*.) Multiple patrons, including Officer Winebrenner, were shot and injured. (*Id*.) The majority ultimately recovered from the injuries. (*Id*.) However, Officer Winebrenner succumbed to his gunshot wounds. (*Id*.)

At the close of his jury trial on October 23, 2015, the jury found Ivery guilty of: one count of aggravated murder with firearm and death penalty specifications; two counts of murder with firearm specifications, two counts of first-degree felonious assault with firearm specifications, four counts of second-degree felonious assault with firearm specifications, two counts of attempted

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

murder with firearm specifications, one count of having weapons while under disability, one count of carrying a concealed weapon, and one count of illegal possession of firearm in a liquor permit premises. (State Ct. J. at PageID 154–60.) The jury also returned a verdict of life imprisonment without the possibility of parole for the aggravated murder conviction, upon its finding that aggravating circumstances did not outweigh mitigating factors beyond a reasonable doubt. (*Id.* at PageID 163.) Following his sentencing hearing, Ivery was sentenced to life imprisonment without the possibility of parole for aggravated murder, and an additional 65 years to be served consecutively for the remainder of his convictions. (*Id.* at PageID 164–66.)

**B.      Appealing Convictions in State Court System**

This case involves an extensive procedural history, on account of Ivery's numerous appeals and requests for collateral review of his conviction and sentence. In the end, his convictions have been repeatedly affirmed by the state courts.

Immediately following his conviction and sentencing, Ivery made a direct appeal to the Ninth District Court of Appeals. (ECF No. 7 Ex. 1, Notice of Appeal at PageID 212–13.) His first two attempts to appeal were dismissed for lack of jurisdiction pending the trial court's entry of final judgment. (*Id.*, Direct Appeal Ct. Docs. at PageID 222–72, 307–08.) Ivery filed, through counsel, his third notice of appeal from the final judgment on February 28, 2017. (*Id.* at PageID 325–26.) In his direct appeal, Ivery raised the following assignments of error, stated here verbatim:

> 1. The trial court erred in refusing the instruct the jury on voluntary manslaughter and reckless homicide.
>
> 2. Appellant's conviction for aggravated murder, murder, attempted murder and felonious assault were based on insufficient evidence as a matter of law and was against the manifest weight of the evidence.

> 3. The trial court erred in denying a Batson challenge when it improperly applied the three step process established by the U.S. Supreme Court.
>
> 4. The trial court committed reversible error when it permitted the state of Ohio to elicit expert testimony from lay witnesses.

(*Id.* at PageID 338–61.) These assignments of error were overruled, and the judgment of the trial court was affirmed. (*Id*. at PageID 431–41.)

After the Ninth District Court of Appeals affirmed his convictions, Ivery filed, *pro se*, a notice of appeal in the Supreme Court of Ohio, seeking to appeal the Court of Appeals' judgment. (*Id*., Ohio Supreme Ct. Docs. at PageID 444–53.) Ivery was granted leave to file a delayed appeal. (*Id*. at PageID 470–71.) On November 5, 2018, Ivery filed a memorandum in support of his appeal. (*Id*. at PageID 472–83.) In it, he argued only one proposition of law, as follows:

> The trial court erred in refusing to instruct the jury on voluntary manslaughter as a lesser included offense, in violation of Ivery's rights to Due Process and Equal Protection under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

(*Id*. at PageID 478–83.) The Supreme Court of Ohio declined to accept jurisdiction of his appeal on January 23, 2019. (*Id*. at PageID 504.)

After the Ohio Supreme Court declined jurisdiction, Ivery once again sought further review of his conviction and sentence at the appellate level. He filed *pro se* two motions in the Ninth Appellate District Court of Appeals, requesting review pursuant to Rule 26 of the Ohio Rules of Appellate Procedure.[2] First, Ivery filed an application for reconsideration under Rule 26(A)(1). (ECF

---

[2] Rule 26 governs applications for reconsideration and reopening. App. R. 26(A)(1), (B). Rule 26(A)(1) permits parties to file a written "application for reconsideration of any cause or motion submitted on appeal," which will then be "considered by the panel that issued the original decision." Rule 26(B) governs applications for

-4-

No. 7 Ex. 1, First Appl. for Recons. Ct. Docs. at PageID 506–12.) The Ninth District Court of Appeals denied the application for reconsideration, explaining that it "neither call[ed] attention to an obvious error nor raise[d] an issue that we did not consider properly," as required. (*Id.* at PageID 518–20.) Subsequently, Ivery filed an application for reopening appeal under Rule 26(B). (ECF No. 7 Ex. 1, First Appl. for Reopening Ct. Docs. at PageID 522–31.) In his application for reopening, Ivery claimed that he "received ineffective assistance of counsel when his court-appointed appellate attorney failed to raise winnable issues in the direct appeal . . . [and] failed to properly raise and/or support three of the four assignments of error that were raised in the direct appeal." (*Id.*) Ivery represented that he would raise the following claims on reopened appeal:

> 1. Sufficiency of evidence: On a reopened appeal, Ivery will raise as individual claims that there was insufficient evidence to find him guilty of aggravated murder, [...] first degree felony felonious assault of a peace officer [...] along with the firearm specifications . . .
>
> 2. Manifest weight of evidence: Ivery will also raise as a separate claim that his conviction for aggravated murder in Count I was against the manifest weight of evidence [...] [because] he was acting in the spur of the moment [...] and/or in self defense.
>
> 3. Consecutive sentences: Here Ivery will challenge that [...] not all of the findings [required to impose consecutive sentences] were supported by the facts and circumstances of his case. . . .
>
> 4. Errors in sentencing for firearm specifications: Ivery contends that the trial court committed multiple errors in the imposition of sentencing on the firearm specifications in his conviction. . . .
>
> 5. Ineffective assistance of counsel for not raising during trial Ivery's

---

> reopening, which are specific to criminal cases: "[a] defendant in a criminal case or a delinquent child in a juvenile case may apply for reopening of the appeal from the judgment of conviction and sentence or a judgment of adjudication or disposition based on a claim of ineffective assistance of appellate counsel . . . filed in the court of appeals where the appeal was decided."

> having been diagnosed with PTSD. . . .
>
> 6. Failure of the trial court to adequately respond to the jury's request for further instruction on what constitutes "spur of the moment" . . .
>
> 7. Trial court's refusal to instruct jury on lesser included offenses of reckless homicide and negligent homicide . . .
>
> Additional claims to be raised: Upon granting of this application, Ivery would also resubmit the third and fourth assignments of error from his direct appeal, as touched on earlier in this application.

(*Id*. at PageID 525–31.) The Ninth District Court of Appeals granted Ivery's first application to reopen his appeal, finding "a genuine issue that counsel was ineffective in representing [Ivery] on appeal." (*Id*. at PageID 541–42.) Ivery was appointed new counsel and instructed to file a brief addressing his claim of deficient counsel, and how he was prejudiced as a result. (*Id*.) Accordingly, on March 23, 2023, Ivery filed, through counsel, his reopened appeal brief in the Ninth District Court of Appeals. (ECF No. 7 Ex 1, Reopened Appeal Ct. Docs. at PageID 544–70.) Ivery argued the following assignments of error on Reopened Appeal:

> 1. The evidence in this case was insufficient as a matter of law to support the convictions . . .
>
> 2. The verdicts in this case [...] were against the manifest weight of the evidence.
>
> 3. Pursuant to the Defendant's right to due process and equal protection, the trial court employed the wrong legal standard for examining the suitability of a juror, thereby entitling the Defendant to a new trial.
>
> 4. Trial court erred in refusing to instruct the jury on reckless homicide.

(*Id*.) On June 17, 2020, the Ninth District Court of Appeals overruled these assignments of error, and affirmed its prior decision upholding his convictions. (*Id.* at PageID 636–52.)

Ivery then repeated the process of seeking appellate review of his convictions. For the second time, he filed applications for reconsideration and reopening in the Ninth District Court of Appeals. On July 28, 2020, Ivery filed *pro se* a second Rule 26(A)(1) application for reconsideration. (Second Appl. for Recons. Ct. Docs. at PageID 604–27.) The appellate court again denied Ivery's application for reconsideration, finding that, "[h]aving reviewed [Ivery]'s application for reconsideration and this [c]ourt's June 17, 2020, decision . . . [Ivery]'s application neither calls attention to an obvious error nor raises an issue that we did not consider properly." (*Id.* at PageID 637–38.) The court also emphasized that, "[Ivery] attempts to reargue the same issues in his reopened appeal, which this Court has already addressed. . . . this [c]ourt reviewed the entire record, including the parts of the record Appellant points to in his application for reconsideration." (*Id*. at PageID 637.)

On September 17, 2020, Ivery filed *pro se* a second Rule 26(B) application to reopen his appeal. (Second Appl. to Reopen Ct. Docs. at PageID 742–53.) In it, Ivery once again asserted ineffective assistance of counsel–-but this time pertaining to his appointed counsel on reopened appeal. (*Id*.) On January 28, 2021, the Ninth District Court of Appeals denied Ivery's application to reopen his previously reopened appeal. (*Id.* at PageID 766–67.) The court made clear that Ivery, "has no right to file successive applications for reopening, and such applications are barred by res judicata. . . . precedent supports this conclusion even when, like here, an appellant's first application for reopening is granted." (*Id*. at PageID 766.)

After the Ninth District Court of Appeals again affirmed his convictions, Ivery filed *pro se* two notices of appeal in the Supreme Court of Ohio, both of which were denied. (Ohio Supreme Ct. Docs. at PageID 655–73.) In the first notice of appeal, filed February 2, 2021, Ivery argued the following propositions of law:

-7-

> 1. [I]nsufficient evidence to support Ivery's convictions [...] and the convictions were against the manifest weight of evidence . . .
>
> 2. The trial court abused its discretion and violated Ivery's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution when it improperly removed petit juror Ron Barnes.

(*Id.*) On April 13, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Ivery's appeal for the second time, having already denied his direct appeal in January 2019. (*Id.* at PageID 704.) In addition, he filed another notice of appeal in the Supreme Court of Ohio on March 10, 2021, arguing the following propositions of law:

> 1. Ivery's constitutional rights to due process and equal protection were violated when the Ninth District Court of Appeals denied his App. R. 26(B) Application for Reopening.
>
> 2. Ninth District abused its discretion by denying Ivery leave to proceed prose on his reopened appeal, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> 3. The trial court's erroneous jury instruction denied his Sixth Amendment right to a fair trial and his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> 4. There was insufficient evidence presented at trial to find Ivery guilty of first degree felonious assault, as charged in Counts 4 and 10, and the peace officer specifications under R.C. 2941.1412, as charged in Counts 1, 2, 3, 4 and 10, and his convictions violate his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> 5. Ivery was denied effective assistance of counsel, as guaranteed under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> 6. The preponderance of evidence supports Ivery's affirmative

> defense of self-defense, and his convictions in Counts 1-11, as charged in his indictment, violate his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution

(*Id*. at PageID 769–88.) The Supreme Court of Ohio declined to accept Ivery's appeal, for the third and last time, on May 25, 2021. (*Id*. at PageID 801.)

Finally, while involved in these extensive state court proceedings, Ivery also filed three petitions for writ of certiorari to the United States Supreme Court. (ECF No. 7 Ex. 1 at PageID 833; Ans. at PageID 14–15.) All were denied.

## C.     Federal Petition for Writ of Habeas Corpus

Ivery filed this Petition on August 25, 2022, challenging his convictions for aggravated murder and related offenses, and his related sentence of life imprisonment without the possibility of parole, plus sixty-five years. (ECF No. 1, Pet.)

In his Petition for Writ of Habeas Corpus, Ivery raises eight Grounds for Relief, claiming the following: (1) the trial court erred in refusing to instruct the jury on voluntary manslaughter; (2) the evidence was insufficient to support his convictions; (3) the trial court violated his due process and equal protection rights when prospective African-American jurors were improperly dismissed; (4) the trial court erred by refusing to instruct the jury on the lesser included offenses of reckless homicide and negligent homicide; (5) he was denied his constitutional right to effective trial counsel; (6) the preponderance of the evidence supports his claim that he was acting in self-defense, (7) the trial court erred in its jury instruction regarding self-defense; (8) the trial court erred in failing to adequately respond to the jury's request for further instruction regarding "spur of the moment" consideration for his aggravated murder charge. (Pet. at PageID 9–30.)

Respondent filed an Opposition/Return of Writ on March 23, 2023. (ECF No. 7, Opp'n.) Petitioner filed his Traverse on August 1, 2023. (ECF No. 16, Traverse.) On June 2, 2025, Judge Knapp issued her R&R, recommending the Petition be denied. (ECF No. 19, R. & R.) Petitioner filed a timely Objection to the R&R. (ECF No. 23, Obj.) The matter is now ripe for adjudication.

## II. LAW AND ANALYSIS

### A. Habeas Petition Under AEDPA

Petitions for Writ of Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a person in custody as a result of a state court decision cannot be granted a writ of habeas corpus unless the adjudication, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §§ 2254(d)(1)–(2). The state court's application of the law must be "objectively unreasonable," not just incorrect or erroneous. *Id*. Therefore, a habeas petitioner must demonstrate objective unreasonableness that meets the intentionally "difficult" standard that the Supreme Court has set, which "stops short of imposing a complete bar." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011). The Supreme Court has explained the high burden for state court prisoners to receive federal habeas relief as follows:

> [E]ven a strong case for relief does not mean that the state court's contrary conclusion was unreasonable. . . . If this [AEDPA] standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state

> court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id*. (internal citations omitted).

**B.     Review of Objections to R&R**

In her Report and Recommendation, Judge Knapp recommended Ivery's Petition be dismissed with prejudice; as to Ground One for lack of a cognizable claim, and as to Grounds Two through Eight for procedural default. (R. & R. at PageID 6328.) Ivery takes issue with these conclusions. (Obj. at PageID 6342.)

When a court receives timely written objections to a magistrate judge's R&R, it "shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, *de novo* review is limited only to those issues that a petitioner specifically identifies. *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Crucially, a "general objection, or one that merely restates the arguments previously presented is not sufficient." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). An objection that summarizes what has already been presented, or states general disagreement with the R&R, is not considered an "objection" for purposes of *de novo* review. *Id.* This is because, in the absence of specific objections, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks . . . wast[ing] judicial resources rather than saving them, and run[ning] contrary to the purposes of the Magistrates Act." *Id*. at 748 (citing *Howard*, 932 F.2d at 509).

Instead of entitling a prisoner-petitioner to full *de novo* review, a non-specific objection "has the same effect as a failure to object." *Aldrich*, 327 F. Supp. 2d at 747–48. In other words, a court that receives only general objections to the R&R—like a court that receives no objections—"need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Committee Notes (detailing lessened standard for adopting R&R when no objection is filed). *See also, e.g.*, *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (citing *Howard*, 932 F. 2d at 509) (explaining courts should not have to do "[a] reexamination of the exact same argument that was presented to the Magistrate Judge" absent specific objections); *Brown v. Hamilton Cnty.*, No. 1:19-CV-00969, 2022 WL 2816266, at *2 (S.D. Ohio July 19, 2022) (citation omitted) ("disregard[ing]" plaintiff's objections because they were too general); *Health Care Facility Mgmt. LLC v. Malabanan*, No. 1:23-CV-00236, 2024 WL 1192919, at *7 (S.D. Ohio Mar. 20, 2024) (explaining multiple R&R objections were "overruled," in part because they, "repackage[d] arguments" previously made, did not address authority relied upon in the R&R, and offered "nothing more than a blanket disagreement with the Magistrate Judge").

Therefore, the court must first determine whether Ivery advances specific objections–-*i.e.*, offers "new argument or facts," that are "not a reiteration of prior arguments in this case." *Aldrich*, 327 F. Supp. 2d at 749; *Feathers v. Foley*, No. 5:22-CV-540, 2024 WL 1990886, at *1 (N.D. Ohio May 6, 2024), *certificate of appealability denied sub nom. Feathers v. Reynolds*, No. 24-3466, 2024 WL 5707887 (6th Cir. Dec. 2, 2024). Insofar as Ivery's arguments are "nothing more than mere disagreements with the R&R," he has failed to present specific objections, as required. *Brown*, 2022 WL 2816266, at *2.

-12-

1. Judge Knapp's Findings and Recommendations

Ground One of Ivery's Petition asserts he is entitled to habeas relief because the trial court should have instructed the jury on voluntary manslaughter. (R. & R. at PageID 6296.) The R&R concludes Ground One should be denied for lack of a cognizable claim under applicable state and federal law. (*Id.* at PageID 6296–6304.) The R&R explains the state law claims fail, because "it has long been established that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" (*Id.* at PageID 6296–98 (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)).) The R&R further explains that Ivery's federal law claims fail, because he has not met his burden, under the AEDPA, of demonstrating the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence. (*Id.* at PageID 6299–6304.)

As to the remaining Grounds Two through Eight, the R&R concludes they have been procedurally defaulted, and must be dismissed on that basis. As to Grounds Two and Three alleging insufficient evidence and improper juror removal, Judge Knapp explains they are procedurally defaulted because Ivery "did not seek review of the appellate court's rulings on those assignments of error in his appeal to the Supreme Court of Ohio." (*Id.* at PageID 6308.) She further finds the default inexcusable, because Ivery has not shown "actual prejudice," given the claims were fully "heard, considered, and ultimately rejected by the state court of appeals on the merits," (*id.* at PageID 6310–20), and also has not shown "fundamental miscarriage of justice" will occur if the court does not take up the claims, given he has not shown he is "actually innocent." (*Id.* at PageID 6319.)

Similarly, Judge Knapp finds Ground Four must be dismissed with prejudice for procedural default. With regard to Ivery's challenge to the trial court's reckless homicide instruction, the R&R

explains this claim is procedurally defaulted because, "the appellate court rejected the argument after considering it on the merits . . . but Mr. Ivery did not seek review of the appellate court's ruling to the Supreme Court of Ohio." (*Id*. at PageID 6320.) Likewise, regarding his challenge to the negligent homicide instruction, the R&R explains "Mr. Ivery did not challenge the trial court's refusal to give a negligent homicide instruction in the direct appeal, let alone pursue that claim through ordinary appellate review procedures." (*Id*. at PageID 6320–21). Moreover, the same occurred on reopened appeal: the appellate court found the challenge to the reckless homicide instruction was meritless, which Ivery again did not appeal, and Ivery did not raise any challenge regarding the negligent homicide instruction. (*Id*. at PageID 6321.) The R&R finds no cause or manifest injustice to excuse procedural default, and no prejudice given the appellate court's ruling on the merits. (*Id*. at PageID 6321–22.)

Finding the remainder of Ivery's claims also procedurally defaulted, Judge Knapp explains: "it is undisputed that Ivery failed to present Grounds Five Through Eight in his direct appeal, and accordingly failed to pursue them through Ohio's appellate review procedures." (*Id*. at PageID 6324.) Finding no cause to excuse the defaults, the R&R breaks down precisely: (1) why Ivery's arguments about ineffective assistance of counsel on reopened appeal are inadequate, and (2) that Ivery's argument concerning "lack of a state corrective process" to challenge reopened appeal counsel is "misplaced," since it confuses procedural default with the separate doctrine of exhaustion. (*Id*. at PageID 6324–27.) Finally, the R&R concludes that, absent cause to excuse the defaults, "it is not necessary for this [c]ourt to consider the issue of prejudice," and Ivery also has not demonstrated manifest injustice will result if Grounds Five through Eight are dismissed. (*Id.* at PageID 6327.)

Having recounted the R&R, the court now turns to Ivery's Objection. (ECF No. 23.) As

explained below, Ivery fails to make specific objections, stating only general disagreements and reiterating prior arguments already considered.

2. Ivery's Failure to State Specific Objections to R&R

The court first notes that it is difficult to discern whether Ivery intends to object to the R&R whatsoever. He repeatedly states he is objecting to matters "*Respondent* argued," rather than identifying or addressing portions of the R&R. (*See, e.g.*, Obj. at PageID 6342–43, 6355–57 (emphasis added).) Furthermore, the document is comprised of, nearly exclusively, lengthy quoted passages from the record in his jury trial and from various other cases. Nonetheless, Ivery is a *pro se* litigant, and thus is entitled to more leeway than a litigant with counsel, so the court has taken care to search the Objection for any assertions that could be construed as specific objections, despite not referencing or citing to the R&R's analysis or findings. The court has not found any.

*a) Failure to State a Claim in Ground One*

Ground One concerns failure to state a claim. Addressing this, Ivery states that he "objects to respondent to saying [sic] ground one has no constitutional violation and . . . has no merit." (Obj. at PageID 6342.) This is merely a general objection, and Ivery does not reference the actual R&R. Rather, he asks the court to consider evidence, facts, and arguments that he has already offered in this case. (*Id.* at PageID 6342–43.) For example, he points out cases cited in prior filings, recounts the trial judge's instructions, as he has done before, (*see* Traverse at PageID 6257), and directly tells the court to simply base its decision on old arguments: "if [this court] look[s] at the totality of ground 5 . . . [it] will determine that Ivery's ground one has merit." (*Id.*) Plainly, Ivery has not made any specific objections to the R&R's recommendation that Ground One be dismissed. Thus, because the court finds no clear error, having thoroughly reviewed the R&R and record, it will adopt Judge

Knapp's recommendation that Ground One be dismissed for failure to state a claim. However, the court further notes that, even if *de novo* review were triggered, the outcome would be the same. The court reviewed Ivery's Petition in its entirety and the associated record, and concluded that Ivery has not stated a cognizable claim in Ground One, for the same reasons explained at length by the Magistrate. A federal habeas petition is not a mechanism for challenging state court's decisions regarding state law, and Ivery has not stated a claim under the AEDPA.

*b) Procedural Default of Grounds Two through Eight*

Ivery also objects to any of his claims being procedurally defaulted. He "objects to respondent saying [he] has not shown prejudice to excuse the procedural default," in Grounds Two and Three. (*Id.* at PageID 6344, 6355.) But these objections are too generalized. Even where Ivery is relatively more detailed, he still repeats the same core argument presented in his Petition and Traverse: that ineffective assistance of counsel on his appeals caused all procedural defaults, so they should be excused. (*Id.* at PageID 6344–46.) However, the R&R already considered and resolved all of his ineffective assistance of counsel arguments. For one, Ivery argues his jury instruction challenges are not procedurally defaulted because his counsel's alleged failure to present evidence of PTSD excuses the default, and he was thereby prejudiced. (*Id.* at PageID 6357–69.) He also argues that he was prejudiced by the lack of a voluntary manslaughter jury instruction, and by counsel's failure to object or challenge allegedly erroneous jury instructions. (*Id.*) But he has made all of these same arguments twice before, and they were fully considered as part of the record in Judge Knapp's preparation of the R&R. (Pet. at PageID 21; Traverse at PageID 6265–70.) Ivery also suggests the Supreme Court of Ohio denying his request to proceed *pro se* is cause excusing procedural default, but the R&R foreclosed this argument as well. (Obj. at PageID 6358; R. & R. at PageID 6324 n. 13.)

Notably, Ivery does not object to Judge Knapp's conclusion that, "even if the failure of Mr. Ivery's attorney to properly brief the issue on direct appeal did amount to 'cause' to support excusing any procedural default, those actions did not result in 'actual prejudice' because the appellate court ultimately considered and decided the issue on the merits." (R. & R. at PageID 6310–18.) At best, Ivery argues prejudice is shown merely by virtue of his allegedly having ineffective counsel, (*see* Obj. at PageID 6369), but this is not sufficient. Moreover, Ivery does not object to the R&R's reasoning that, for his ineffective assistance of counsel claims, he either: (1) cannot show prejudice, because "the appellate court ultimately considered and decided the issue on the merits," (R. & R. at PageID 6310–18), as discussed previously, or (2) cannot show cause to excuse default, because the state court on reopened appeal found Grounds Five through Eight barred by res judicata, which is "an independent and adequate ground for precluding relief." (*See id*. at PageID 6320–22.) Moreover, the R&R explains an appellate counsel's conduct cannot "cause" a procedural defect which occurred before the appeal, and attorney error on reopened appeal cannot excuse procedural default because there is no constitutional right to representation in reopened appeals. (*Id.* at PageID 6325.) Ivery does not respond with any new arguments or evidence, or otherwise challenge these conclusions.

Given the lack of specific objections to the R&R's recommendation to dismiss Grounds Two through Eight for procedural default, the court, again, "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Committee Notes. Having thoroughly reviewed and finding no clear error, the court will adopt Judge Knapp's recommendation to dismiss Grounds Two through Eight. However, the court further emphasizes that the outcome would be the same even if its *de novo* review were required. The court has reviewed Ivery's Petition and the record in its entirety, despite his lack of specific

-17-

objections to the R&R. In so doing, the court found Grounds Two through Eight are procedurally defaulted as a matter of law. Thus, for the reasons correctly explained in the R&R and recounted above, Grounds Two through Eight must be dismissed. Ivery cannot use this federal habeas petition to repeat arguments either already fully heard and decided on their merits by state courts, or that he failed to first raise in the appropriate forum when he had the opportunity to do so. Moreover, the record does not show cause, manifest injustice, or prejudice to excuse the procedural default.

### III. CONCLUSION

For the reasons stated above, and after careful review of the R&R and associated record, the court finds no clear error on the face of the R&R (ECF No. 3), and adopts it as its own. Further, the court finds that, even upon *de novo* review, the Petition should be denied for the reasons stated by the Magistrate Judge. Therefore, the court hereby denies Ivery's Petition for Writ of Habeas Corpus (ECF No. 1), and enters final judgment in favor of Respondent. The court further certifies that there is no basis upon which to issue a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

January 7, 2026